# United States Court of Appeals
## For the First Circuit

No. 09-1443

BERNARD L. ADAMS,

Plaintiff, Appellee,

v.

LEE B. ADAMS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Stahl, Circuit Judges.

Christopher A. Duggan with whom H. Reed Witherby and Smith & Duggan LLP were on brief for appellant.
Stephen G. Howard with whom Gregory R. Youman and K&L Gates LLP were on brief for appellee.

March 31, 2010

**STAHL**, __Circuit Judge__.  This case arises from a dispute over a promissory note (the "Note") executed on September 8, 1988, by a son, Lee B. Adams ("Lee"), in favor of his father, Bernard L. Adams ("Bernard").  On May 16, 2008, Bernard filed suit in the federal district court of Massachusetts, seeking enforcement of the terms of the Note.  Lee filed a motion to dismiss the complaint for lack of personal jurisdiction, and the district court denied the motion without hearing or explanation.  Bernard subsequently filed a motion for summary judgment.  Lee renewed his arguments that the District of Massachusetts lacked jurisdiction over him, but the court granted summary judgment in favor of Bernard, specifically affirming its prior ruling on the jurisdictional issue, and Lee appealed.

We reverse on the ground that the district court lacked personal jurisdiction over Lee.

## I. Facts and Background

The circumstances which gave rise to the Note are disputed by the parties.  Lee claims that shortly after he moved to Texas in 1988 with his then-wife Cynthia Adams, his parents, Bernard and Mary Jeanne Adams, promised to give him funds to help him purchase a home in Texas as an additional wedding present.  Lee asserts that in reliance on that promise, he and Cynthia optioned a vacant lot in Frisco, Texas, on which they constructed a home.

-2-

According to Lee, Bernard phoned him on or about September 8, 1988, and told him that his accountant had advised that Lee needed to sign a promissory note for the funds his parents had agreed to give him in order for Bernard to minimize taxes on the transfer. Lee claims that Bernard told him that if Lee executed the Note, Bernard would not enforce it.

Bernard disputes what he calls the "'additional wedding present' assertion," claiming that the $110,000 transfer of funds from himself to Lee was intended to be a loan and not a gift and that the Note was executed in consideration of the loan.

Bernard does not dispute, however, that the Note came into being after he required, via telephone conference, that Lee sign such a document before the funds would be delivered. Bernard also does not dispute that he initiated the phone call to Lee, who was located in Texas at the time.

After that conversation, on September 8, 1988, Lee received the Note in Texas and executed it under seal.[1] The Note, in its entirety, provides:

> FOR VALUE RECEIVED ($110,000 CASH), Mr. Lee Adams of Frisco, Texas promises to pay to Mr. Bernard Adams of Boston, Massachusetts the sum of $110,000 plus accrued interest at an annual rate of 8%. This sum having been advanced to Mr. Lee Adams exclusively for use in funding the construction of his home. Interest will accrue beginning June 1, 1988. No payments of interest or principal are due until January 1, 1989, at which time the note and accrued interest will be due upon demand.
>
> This note shall be binding upon Mr. Lee Adams and his heirs, executors and assigns and shall inure to the benefit of Mr. Bernard Adams and his heirs, executors and assigns.
>
> WITNESS the execution hereof as an instrument under seal as of this 8 day of September, 1988.

---

[1]Because the Note was executed "under seal," at the time of its execution under Massachusetts law (if applicable), a twenty-year statute of limitations for contracts under seal would apply. See Mass. Gen. Laws ch. 260, § 1. Notably, Massachusetts has since adopted the Uniform Commercial Code's specific statute of limitations for demand notes, which provides that an action to enforce a party's obligation to pay a note payable "on demand" must be commenced within six years after the demand. Mass. Gen. Laws ch. 106, § 3-118(b). If no demand is made, any action to enforce the note is barred if neither principal nor interest on the note has been paid for a continuous period of ten years. Id. As the official comments state, if ten years passes after the making of a note with no payment and no demand for payment, it is "likely to be a family transaction in which a failure to demand payment may indicate that the holder did not intend to enforce the obligation but neglected to destroy the note." Id. cmt. 2.

We note that Bernard's first written demand for payment on the Note was made in 2005. Although Bernard alleges that he made oral demands for payment before that date, he has asserted no dates for those demands.

Bernard subsequently transferred $110,000 of his personal funds from a Massachusetts bank to Lee's account in Texas. It appears that the signed Note was not then returned to Bernard.[2] In fact, Bernard has never produced the original of the Note. The copy of the Note which appears in the record shows a facsimile transmission header indicating that it was faxed on June 20, 2003, by Geary Porter, a Texas law firm, apparently to either Bernard or his law firm, although the record does not so reflect. This copy was produced by Bernard's lawyers when Lee was deposed in connection with Bernard's divorce case.

At the time the Note was executed, Lee was a resident of Texas, and he has been a Texas resident since that time. Bernard was a resident of Massachusetts when he transferred the $110,000 to Lee.[3] Bernard asserts that he has been continuously domiciled in Massachusetts since 1953.[4]

---

[2]Lee asserts that he did not send any document (electronic or paper) into Massachusetts in connection with the Note, and Bernard does not claim otherwise.

[3]There is no evidence in the record that Bernard was physically in Massachusetts when he placed the phone call to Lee, requiring Lee to sign the promissory note. Bernard has stated merely that he was "residing in Massachusetts at the time" of the phone conversation. Additionally, there is no evidence that Lee knew whether Bernard was in Massachusetts at the time. Lee does not dispute, however, that Bernard was a resident of Massachusetts at the time of the transfer.

[4]Bernard stated in a deposition that from 2006 to 2008 he lived temporarily at addresses in other states, including Florida and Maine, during the pendency of his divorce from Lee's mother, Mary Jeanne Adams.

In addition to the facts pertaining specifically to this transaction, Bernard has offered evidence of Lee's more general contacts with Massachusetts.[5]  But as Bernard has not attempted to assert the existence of general jurisdiction over Lee, and the additional contacts he cites are not related to the Note on which he bases this cause of action, we do not consider these sporadic contacts in our analysis.

## II. Standard of Review

When a court's personal jurisdiction over a defendant is contested, the plaintiff has the ultimate burden of showing by a preponderance of the evidence that jurisdiction exists.  Ealing Corp. v. Harrods Ltd., 790 F.2d 978, 979 & n.1 (1st Cir. 1986).  A district court "may choose from among several methods to determine whether the plaintiff has met [his] burden."  Adelson v. Hananel,

_____

[5]Lee was born and raised in Massachusetts, but he has not lived in Massachusetts since 1980.  Between the years 1980 and 2008, he made several visits to Massachusetts, none of them in connection with the Note.  According to Lee, the number of visits is three; Bernard asserts that there have been at least five visits.  Lee worked for his family's business, Laminated Papers, Inc. ("Laminated Papers") from 1981 through 2004, and for a brief period prior to his graduation from college in 1980.  Laminated Papers was a Massachusetts corporation located in Holyoke, Massachusetts.  During his tenure at Laminated Papers, Lee received a total salary of $950,233.33, and he withdrew pension benefits in the amount of $65,178.02.  Laminated Papers paid health and life insurance premiums for Lee and on his behalf.  Lee was given the use of a company car, and he held a company American Express account and company phone card.  Lee notes that the work he did for Laminated Papers after graduating college was not performed in Massachusetts and did not require him to travel to Massachusetts, and Bernard does not dispute this assertion.

-6-

510 F.3d 43, 48 (1st Cir. 2007) (quoting <u>Daynard</u> v. <u>Ness, Motley, Loadholt, Richardson & Poole, P.A.</u>, 290 F.3d 42, 50-51 (1st Cir. 2002)) (internal quotations omitted).  Here, because the district court did not hold an evidentiary hearing before ruling on the jurisdictional question, we would normally assume that the court had employed the prima facie method.  See <u>Phillips</u> v. <u>Prairie Eye Center</u>, 530 F.3d 22, 26 & n.2 (1st Cir. 2008) (citing <u>Foster-Miller, Inc.</u> v. <u>Babcock & Wilcox Canada</u>, 46 F.3d 138, 146 (1st Cir. 1995)).  But the case then proceeded to summary judgment, at which time Lee again challenged the court's jurisdiction.  In granting summary judgment in favor of Bernard, the district court implicitly found that Bernard had demonstrated jurisdiction by a preponderance of the evidence.

In finding that two cases which Lee raised did not alter its previous decision on the jurisdictional question, the court added:

> In this case, Defendant [Lee] negotiated the Note over the phone with Plaintiff, whom Defendant knew was located in, and a resident of, Massachusetts.  Additionally, Defendant executed the Note knowing that the $110,000 he received was from a Massachusetts resident.  Finally, the funds were disbursed through a Massachusetts bank.

<u>Adams</u> v. <u>Adams</u>, No. 08-10828-JLT, slip op. at 10-11 (D. Mass. Mar. 4, 2009).  Thus, despite the lack of an evidentiary hearing, it appears that the court evaluated the parties' submissions and

determined that Bernard had shown by a preponderance of the evidence that the court had personal jurisdiction over Lee.[6]

We review the court's factual findings for clear error, but our review of the court's legal conclusions as to whether its findings support the existence of personal jurisdiction is always non-deferential and plenary. Foster-Miller, Inc., 46 F.3d at 147-48.

### III. Discussion

The only factual findings which the district court appears to have made regarding the jurisdictional issue were: (1) Lee negotiated the Note over the phone with Bernard;[7] (2) Lee knew that Bernard was located in,[8] and a resident of, Massachusetts; (3) Lee executed the Note knowing that the $110,000 he received was

---

[6]Lee argues that the court deprived him of the right to have Bernard's jurisdictional showing evaluated under a preponderance-of-the-evidence standard, claiming that the court never required Bernard to make more than a prima facie jurisdictional showing before entering judgment against Lee. Assuming, as we do, that the court did, indeed, apply the preponderance-of-the-evidence standard, it nonetheless came to the incorrect conclusion.

[7]Lee disputes the court's characterization of the conversation, arguing that there was no "consensual bargaining process" to constitute negotiation. We must assume that by "negotiated the Note over the phone," the court was referring to Bernard's insistence that Lee sign the Note and Lee's acquiescence to that request. The facts put forward by Bernard himself can lead to no other interpretation.

[8]As we noted above, there is no evidence in the record that Bernard was, in fact, located in Massachusetts at the time of the phone call, much less that Lee knew whether he was in Massachusetts at the time. Because this particular factual finding has no record basis, we do not consider it in our analysis.

from a Massachusetts resident; and (4) the funds were disbursed through a Massachusetts bank.

Even if we assume the truth of these findings, apart from that discussed in note 8, and accept all other evidence offered by Bernard,[9] we hold that Bernard has not demonstrated the existence of personal jurisdiction by a preponderance of the evidence.

Bernard grounds his claim of specific personal jurisdiction over Lee in the Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3. Specifically, Bernard argues that the long-arm statute authorizes jurisdiction over Lee because Lee met the "transacting any business in [the] commonwealth" requirement of 223A, § 3(a). "We proceed directly to the constitutional analysis, because the Supreme Judicial Court of Massachusetts has interpreted the state's long-arm statute as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States." Phillips, 530 F.3d at 26 (internal quotations omitted).

In order for Massachusetts to exercise personal jurisdiction over Lee, an out-of-state defendant, the Due Process Clause requires that Lee have sufficient minimum contacts with the state, such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken

---

[9]In reviewing the evidence, we also accept facts put forward by the defendant to the extent that they are uncontradicted. See Daynard, 290 F.3d at 51.

v. <u>Meyer</u>, 311 U.S. 457, 463 (1940)).  When determining whether specific jurisdiction exists, we have broken the minimum contacts analysis into three categories -- relatedness, purposeful availment, and reasonableness:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities.  Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable.  Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

<u>Adelson</u>, 510 F.3d at 49.  We begin by asking whether Bernard has demonstrated that his claims were directly related to or arose out of Lee's contacts with Massachusetts.

A. Relatedness

Bernard's claims sound in contract, so we look to whether "the defendant's activity in the forum state was 'instrumental either in the formation of the contract or its breach.'"  <u>Adelson</u>, 510 F.3d at 49 (quoting <u>Phillips Exeter Acad.</u> v. <u>Howard Phillips Fund, Inc.</u>, 196 F.3d 284, 289 (1st Cir. 1999)).

Bernard has not demonstrated the typical factors which have led us to conclude that there is sufficient relatedness between the plaintiff's claims and the defendant's actions in the forum state to warrant the exercise of specific personal jurisdiction.  This is not a case in which the specific terms of a contract were "formalized and entered into" in the forum state.

-10-

See Adelson, 510 F.3d at 49.  Rather, the Note was discussed over the phone, between one party in Texas and the other who may or may not have been in Massachusetts.  We could infer that the Note was drawn up in Massachusetts (though the record is silent on this point), but it was executed in Texas.  Nor is this a case in which the defendant was "subject to 'substantial control and ongoing connection to [the forum state] in the performance of this contract.'"  Phillips, 530 F.3d at 27 (quoting Adelson, 510 F.3d at 49) (alteration in Phillips).

That said, to the extent that accepting funds from a Massachusetts resident and discussing and executing an agreement to repay those funds may be considered "contacts" with Massachusetts, those acts are directly related to Bernard's claims.  Bernard's cause of action arises out of the Note and Lee's failure to pay.  So we will assume, arguendo, that Bernard has satisfied the relatedness prong and consider purposeful availment.

B. Purposeful Availment

The focus of the purposeful availment inquiry is the defendant's intentionality.  "This prong is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts."  United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 624 (1st Cir. 2001) (citing Phillips Exeter, 196 F.3d at 292;

Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 207-08 (1st Cir. 1994)). Purposeful availment rests on the elements of voluntariness and foreseeability. Sawtelle v. Farrell, 70 F.3d 1381, 1391 (1st Cir. 1995). "Voluntariness requires that the defendant's contacts with the forum state 'proximately result from actions by the defendant himself.'" Phillips, 530 F.3d at 28 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). "The contacts must be deliberate, 'and not based on the unilateral actions of another party.'" Phillips, 530 F.3d at 28 (quoting Adelson, 510 F.3d at 50). Foreseeability requires that the contacts with the forum state be of a nature that the defendant could "reasonably anticipate being haled into court there." Adelson, 510 F.3d at 50 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)) (internal quotations omitted).

Lee's contacts with Massachusetts were voluntary to the extent that he knowingly accepted funds from a Massachusetts resident and acquiesced in his father's requirement that he execute the Note in order to receive the $110,000. In so doing, he was "promis[ing] to pay . . . Mr. Bernard Adams of Boston, Massachusetts."

However, the fact that Lee accepted funds from an individual who happened to be a Massachusetts resident and executed a promise to repay that individual does not persuade us that he should have foreseen that he could be haled into court in

-12-

Massachusetts. We have held that a defendant's awareness of the plaintiff's state of residence is not, by itself, enough to create personal jurisdiction. Phillips, 530 F.3d at 28. Further, we have held that a defendant's entering into a contract with a resident of the forum state cannot automatically establish minimum contacts. "'[P]rior negotiations and contemplated future consequences, along with . . . the parties' actual course of dealing . . . must be evaluated in determining whether the defendant' has minimum contacts with the forum." Swiss Am. Bank, 274 F.3d at 621 (quoting Burger King, 471 U.S. at 479).[10]

Here, the only evidence of "negotiations" between the parties prior to the execution of the Note is the September 1988 phone conversation between Bernard and Lee. Bernard points to this phone call as evidence of purposeful availment, arguing that "[p]er existing case law, phone calls, e-mails and faxes between an out-of-state defendant and the Commonwealth of Massachusetts are sufficient to establish specific personal jurisdiction over a non-resident defendant." We look to evidence of telephone or electronic communication when a defendant has not been physically

---

[10]In Swiss American Bank, we engaged in this analysis in the context of the relatedness prong, explaining that since that prong focuses on the nexus between the defendant's contacts and the plaintiff's cause of action, we would begin by identifying the alleged contacts, since there can be no requisite nexus between the contacts and the cause of action if no contacts exist. 274 F.3d at 621. However, as we have noted, the defendant's contacts are central to each prong of the tripartite analysis. Sawtelle, 70 F.3d at 1389.

present in the forum state because it serves as evidence that the defendant "reached into the forum."  Swiss Am. Bank, 274 F.3d at 622; cf. Phillips Exeter, 196 F.3d at 292 ("Without evidence that the defendant actually reached out to the plaintiff's state of residence to create a relationship -- say, by solicitation -- the mere fact that the defendant willingly entered into a tendered relationship does not carry the day."  (citation omitted)).

First, there is no evidence that the one phone call which Bernard cites was indeed between Lee and "the Commonwealth of Massachusetts," as Bernard suggests, as there is no evidence that Bernard was in Massachusetts when he placed the call.  More importantly, even if Bernard were in Massachusetts at the time, it is significant that he, and not Lee, initiated the phone call.  The Note that resulted is one that Bernard required Lee to execute before delivering the funds.  A phone call from Bernard to Lee in Texas concerning a contract that Bernard demanded that Lee execute is not sufficient evidence that Lee "reached into" Massachusetts.[11]

---

[11]See also Moelis v. Berkshire Life Ins. Co., 887 N.E.2d 214, 219 (Mass. 2008) (holding that nonresident plaintiffs' purchase of an insurance policy from a Massachusetts company through agents in their home states, and their mailing of annual premium payments to Massachusetts did not constitute minimum contacts).  The district court found Moelis distinguishable on the theory that the only contacts with Massachusetts in that case were the sending of mail to a party located in the Commonwealth subsequent to a bargain negotiated outside the Commonwealth.  As we have previously discussed, however, there is no evidence in this case that the Note was negotiated in Massachusetts.  It was negotiated over the phone while one party was in Texas, and the other was in some location not revealed by the record.

See Phillips, 530 F.3d at 29 (noting that "[d]efendant did not initiate the contact with plaintiff in Massachusetts; rather, it was the other way around," and holding that purposeful availment was lacking).  There is no additional evidence in the record concerning the parties' "negotiations."[12]

As for the "contemplated future consequences" of the Note, we find that they, too, do not suggest purposeful availment by the defendant.  There is little evidence in the record other than the language of the Note itself as to what the parties contemplated would be the future consequences of the Note.  That said, we can surmise from the Note that the law of Texas likely would apply to its interpretation and enforcement.  "[T]he law applicable to a note is the law of the place where the note is payable."  Rokowsky v. Gordon, 501 F. Supp. 1114, 1121 (D. Mass. 1980) (citing Walling v. Cushman, 130 N.E. 175, 176 (Mass. 1921)).  Here, the Note does not list any place of payment,[13] but "[a] demand

_____

[12]At oral argument, we questioned Lee's counsel as to the extent of the conversations about the $110,000 between Lee and Bernard prior to the execution of the Note.  We asked whether Bernard had "called Lee out of the blue to offer to lend him money."  Lee's counsel said, "Oh, no.  There had been discussions prior about lending the money, or giving the money -- Lee says giving the money as a wedding gift to help . . . he and his new wife buy a house."  However, there is no evidence in the record of any such discussions, and it was Bernard's burden to put forward such evidence if, indeed, those discussions took place.

[13]The fact that the Note contains a promise to pay "Mr. Bernard Adams of Boston, Massachusetts" is not to the contrary.  The Note names Boston, Massachusetts as Bernard's place of residence, but that does not indicate that payment was due in Massachusetts.

-15-

note is payable at the place of residence of the maker if no place of payment is named in the note." Rokowsky, 501 F. Supp. at 1121 (citing 11 Am. Jur. 2d Bills and Notes § 89).[14] It is undisputed that at the time the Note was executed, Lee's place of residence was Frisco, Texas, so the Note was payable there. The Note drawn up by Bernard could easily have specified that it was to be payable in Massachusetts, but it did not so require. Thus, on the face of the Note, it was not contemplated by the parties that the Note would be governed by the laws of Massachusetts. This is yet further evidence that Lee did not purposefully avail himself of the benefits and protections of Massachusetts law.

We hold that Bernard has not demonstrated by a preponderance of the evidence that Lee's actions related to the Note constitute sufficient purposeful availment to allow for the exercise of jurisdiction. Thus, we need not proceed to consider the reasonableness prong of the analysis. See Swiss Am. Bank, 274 F.3d at 625.

---

[14]While the Uniform Commercial Code ("UCC") was adopted in Massachusetts in 1958, the particular portion of the Code having to do with where demand notes are payable when no place of payment is stated was not enacted in Massachusetts until 1998. See Mass. Gen. Laws, ch. 106 § 3-111. Section 3-111 of the UCC espouses the same principle cited by the Rokowsky court: "If no place of payment is stated, an instrument is payable at the address of the drawee or maker stated in the instrument. If no address is stated, the place of payment is the place of business of the drawee or maker. . . . If the drawee or maker has no place of business, the place of payment is the residence of the drawee or maker."

## IV. Conclusion

The judgment of the district court is <u>reversed</u>. We remand with instructions to dismiss the complaint for lack of personal jurisdiction.

**<u>Reversed and remanded.</u>**