**Keith and Marie HARRELL, Plaintiffs**

v.

**Rusty REPP and Deena Sansone, Defendants.**

No. 09–cv–30196–MAP.

United States District Court, D. Massachusetts.

Dec. 29, 2010.

---

Michele L. Anderson, Anderson Byrne, LLC, Saratoga Springs, NY, Matthew H. McNamara, Thorn Gerson Tyman and Bonanni, LLP, Albany, NY, for Plaintiffs.

Andrew C. Gately, Gately Law Firm, LLC, Newton, MA, Ellen C. Kearns, Christopher M. Pardo, Constangy Brooks & Smith, LLP, Boston, MA, Arthur V. Lambert, Kane, Russell, Coleman & Logan, P.C., Dallas, TX, for Defendants.

### MEMORANDUM AND ORDER REGARDING DEFENDANT DEENA SANSONE'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (Dkt. No. 23)

PONSOR, District Judge.

## I. INTRODUCTION

In September 2010, Plaintiffs Keith and Marie Harrell filed this amended complaint against Defendants Rusty Repp and Deena Sansone alleging defamation, injurious falsehood, commercial disparagement, violation of the Lanham Act, intentional infliction of emotional distress, and inter-

ference with business relationships.[1] Defendant Sansone has moved to dismiss for lack of personal jurisdiction and improper venue. (Dkt. No. 23.) The court will allow the motion.

## II. *FACTS*

The parties are members of a community of agriculturalists that raises and markets Nigerian Dwarf Goats. Nigerian Dwarf Goats are miniature dairy goats that have been recognized by the American Goat Society ("AGS") since 1984 and included in the American Dairy Goat Association's ("ADGA") Herdbook since 2005. (Dkt. No. 16, Compl. ¶ 11.) Plaintiffs, who live in North Carolina, breed and sell Nigerian Dwarf Goats under the herd name "NC PromisedLand," and Plaintiff Keith Harrell is a licensed dairy goat judge with both the AGS and the ADGA. (*Id.* at ¶ 12.) Defendant Repp, who lives in Georgia, also breeds and sells Nigerian Dwarf Goats and is himself a goat judge for the ADGA. Defendant Sansone, who lives in Michigan, breeds and sells Nigerian Dwarf Goats under the herd name "Kaapio Acres." (*Id.* at ¶ 15.) The parties show and sell their goats at goat shows throughout the southeast United States. (*Id.* at ¶ 13.)

In June 2009, Defendant Repp filed a complaint with the ADGA in which he alleged that Plaintiffs were misrepresenting the pedigree of their goats ("ADGA Complaint"). The ADGA Complaint, which was signed by forty-nine goat breeders, asserted that Plaintiffs were engaged in fraud and deception, which "may have irreversible effects on the Nigerian Dwarf herd book and genetic pool." (Dkt. No. 16, Ex. A.) The ADGA determined that the allegations were insufficient to require an investigation but referred the complaint to the American Nigerian Dwarf Dairy Goat Association and the ADGA Breed Standards Committee for further review. (Dkt. No. 16, Ex. B.) The results of these reviews are not in the record.

Plaintiffs allege that, in addition to filing the ADGA complaint, Defendants spread rumors throughout the Nigerian Dwarf Goat community that Plaintiffs were cross breeding their goats with Alpine and Toggenburg breeds, which are not Nigerian Dwarf Goat breeds. (Dkt. No. 16, Compl. ¶ 27(a).) They further allege that former Defendant Todd Biddle told fellow Nigerian Dwarf Goat exhibitors "that it was a fact that Keith Harrell was a drag queen." (*Id.* at ¶ 27(b).) Plaintiffs' allegations specific to Defendant Sansone are that she spread rumors at goat shows in South Carolina and Michigan that the NC Promisedland herd was "cross bred and disease ridden." (*Id.* at ¶ 27(n).) As a result of Defendants' dissemination of these false statements, Plaintiffs assert that they "and their animals will be forever tainted within the goat industry." (*Id.* at ¶ 24.)

## III. *DISCUSSION*

### A. *Specific Jurisdiction.*

■ Defendant Sansone has filed a motion to dismiss on the grounds that this court cannot properly exercise personal jurisdiction over her. "When a court's personal jurisdiction over a defendant is contested, the plaintiff has the ultimate burden of showing by a preponderance of the evidence that jurisdiction exists." *Adams v. Adams,* 601 F.3d 1, 5 (1st Cir. 2010).

■ Plaintiffs, who are proceeding under a theory of specific jurisdiction,[2] must

---

1.  A third defendant, Todd Biddle, was dismissed from the case by stipulation in October 2010. The original complaint, filed in November 2009, did not include Defendant Sansone.

demonstrate that jurisdiction comports with both the requirements of the Massachusetts long-arm statute and the Due Process Clause of the Fifth Amendment. *See Adelson v. Hananel,* 510 F.3d 43, 48 (1st Cir.2007). The Massachusetts long-arm statute provides in pertinent part:

A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . .

(c) causing tortious injury by an act or omission in this commonwealth;

(d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct . . . in this commonwealth.

Mass. Gen. Laws ch. 223A, § 3(a) (2000). In Massachusetts, the court can "sidestep the statutory inquiry and proceed directly to the constitutional analysis because the state's long-arm statute is coextensive with the limits allowed by the Constitution." *Adelson,* 510 F.3d at 49 (citations and quotation marks omitted).[3]

In order for Massachusetts to exercise personal jurisdiction over Defendant Sansone, who lives out of state, the Due Process Clause requires that Defendant Sansone have sufficient minimum contacts with the state, such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316,
66 S.Ct. 154, 90 L.Ed. 95 (1945). The familiar minimum contacts analysis involves three distinct inquiries into: (1) the connection between the defendant's forum-state activities and the litigation, (2) whether the defendant purposely availed herself of the privilege of conducting activities in the forum state, and (3) whether the exercise of personal jurisdiction is reasonable. *Adelson,* 510 F.3d at 49.

To rule on Defendant Sansone's Motion to Dismiss, the court need go no further than the inquiry into the connection between her conduct and the litigation. *See Harlow v. Children's Hosp.,* 432 F.3d 50, 57 (1st Cir.2005) ("For specific jurisdiction, the plaintiff's claim must be related to the defendant's contacts.") Plaintiffs point to three contacts that Defendant Sansone has had with Massachusetts to satisfy the minimum contacts requirement: (1) at some point Sansone stayed with her friend Anne Petersen in Rehobeth, Massachusetts, while Ms. Petersen was going through a divorce; (2) Sansone sent an email to a group of people, one of whom was Ms. Petersen in Massachusetts; and (3) the ADGA complaint, which Sansone signed, was also signed by four Massachusetts residents. (Dkt. No. 26, Pls.' Mem. in Opp'n at 4.) None of these supposed contacts is connected to the litigation.

As to the first contact, Plaintiffs do not allege that their claims arose as a result of Defendant Sansone's visit with Ms. Petersen. As to the second contact, Plaintiffs

2. Specific jurisdiction contrasts with general jurisdiction, which requires a showing of "continuous and systematic" contacts between Defendants and the forum state. *Adelson,* 510 F.3d at 49. No such contacts are alleged here.

3. It is clear, despite Plaintiffs' contention to the contrary, that none of Defendant Sansone's conduct satisfies Massachusetts' long-arm statute. Plaintiffs allege no facts on which the court could find that Defendant Sansone engaged in any persistent course of conduct in Massachusetts, that Plaintiffs suffered any injury in Massachusetts, or that Defendant Sansone committed a tortious act in Massachusetts.

do not allege that this email caused them any injury. In the email, Defendant Sansone warns approximately eight fellow goat breeders, including Ms. Petersen, that Plaintiffs appear to be attempting to entrap members of the goat-breeding community to make statements in writing against them. However, her comments are unrelated to Plaintiffs' charges of defamation in that she makes no disparaging comments about Plaintiffs' goats nor does she allege that Plaintiff Keith Harrell is a drag queen. (Dkt. No. 26, Ex. B at 15.) As to the ADGA complaint, Plaintiffs do not allege that Defendant Sansone did any more than sign it. The complaint filed in this case, in fact, states that Defendant Repp filed the ADGA complaint. (Dkt. No. 16, Compl. ¶ 17.) Thus, while Defendant Sansone's signature is on the complaint, there is no connection between her signature and Massachusetts.

Plaintiffs argue, with no legal support, that their bare allegation that Defendants acted jointly requires the court to impute to each defendant the actions of the other. Even if personal jurisdiction could be exercised over a defendant based on a co-defendant's conduct in the forum, which it cannot, the only alleged statement made by Defendant Repp in Massachusetts is a question that he posed to fellow goat exhibitors at a Barnstable fair: "don't [Plaintiffs' goats] look just like Alpines or Toggs?" (*Id.* ¶ 27(h).) As this is not an actionable statement, there are no Massachusetts-based allegations to impute to Defendant Sansone. *See Riley v. Harr*, 292 F.3d 282, 289 (1st Cir.2002) (quoting *Gray v. St. Martin's Press, Inc.*, 221 F.3d 243, 248 (1st Cir.2000)) ("[E]ven a provably false statement is not actionable if 'it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts.'").

For the foregoing reasons, Plaintiffs have not met their burden of showing by a preponderance of the evidence that this court may properly exercise jurisdiction over Defendant Sansone. Thus, Defendant Sansone's motion to dismiss will be allowed.

### B. *Jurisdictional Discovery.*

Plaintiffs have requested the opportunity to conduct jurisdictional discovery if the court finds that the current evidence is insufficient to establish personal jurisdiction over Defendant Sansone. In an effort to satisfy the minimum contacts requirements of " 'relatedness, purposeful availment, and reasonableness,' " *Negron–Torres v. Verizon Communs., Inc.*, 478 F.3d 19, 24 (1st Cir.2007) (quoting *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 135 (1st Cir.2006)), Plaintiffs seek to determine the dates in which Defendant Sansone was in Massachusetts; the names of any Massachusetts residents with whom she has corresponded, as well as the dates and content of the correspondence; and whether she encouraged Massachusetts residents to sign the ADGA complaint.

■ " '[A] diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of *in personam* jurisdiction *may* well be entitled to a modicum of jurisdictional discovery.' " *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 625 (1st Cir.2001) (emphasis in original) (quoting *Sunview Condominium Ass'n v. Flexel Int'l, Ltd.*, 116 F.3d 962, 964 (1st Cir.1997)). Here, Plaintiffs have made out no such colorable case. First, the dates that Defendant Sansone visited Massachusetts are irrelevant, as the cause of action has no connection to her visit with Ms. Petersen. The same is true with respect to Plaintiffs' request for any evidence that Defendant Sansone ever

 

conducted any conversations with a Massachusetts resident. Finally, as to the ADGA complaint, even taking as true Plaintiffs' claim that Defendant Sansone signed it and is friendly with its author, no reasonable inference can be drawn from these facts that she encouraged Massachusetts-based goat breeders to sign it. Moreover, even if she had, such conduct would not establish the requisite minimum contacts. *See Platten,* 437 F.3d at 138 (quoting *Far W. Capital, Inc. v. Towne,* 46 F.3d 1071, 1077 (10th Cir.1995)) (" 'It is well established that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts.' "). Accordingly, the court will deny Plaintiffs' request for jurisdictional discovery.

### C.  *Improper Venue.*

Given that the court will allow Defendant Sansone's motion to dismiss, it need not address the issue of improper venue at length. Nevertheless, it appears clear that venue is not proper. Under 28 U.S.C. § 1391(a), venue is proper in the jurisdiction in which one or more defendants lives or where "a substantial part of the events or omissions giving rise to the claim occurred." *Id.* Here, none of the parties lives in Massachusetts, and under no reading of the complaint could the court conceivably find that a substantial part of the events giving rise to the claim occurred in Massachusetts.

### IV.  *CONCLUSION*

Defendant Deena Sansone's Motion to Dismiss for Lack of Jurisdiction (Dkt. No. 23) is hereby ALLOWED. Plaintiffs' decision to file this case in Massachusetts is puzzling, as no one involved in the case seems to have any connection to the state. Absent a motion to dismiss, the case will proceed against the sole remaining defen-

dant, Rusty Repp, in accordance with the revised scheduling order. (*See* Dkt. 32.)

It is So Ordered.