# United States Court of Appeals
## For the First Circuit

No. 21-1567

VAPOTHERM, INC.,

Plaintiff, Appellant,

v.

CLAYTON SANTIAGO,

Defendant, Appellee,

VERO BIOTECH, LLC,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Steven J. McAuliffe, U.S. District Judge]

Before

Thompson, Howard, and Gelpí,
Circuit Judges.

Michael S. Lewis, with whom Michael K. O'Neil and Rath, Young and Pignatelli, P.C. were on brief, for appellant.
Brett Walker, with whom Jay Gregory and Gordon Rees Scully Mansukhani, LLP were on brief, for appellee.

June 28, 2022

**GELPÍ**, **Circuit Judge**.   This is an appeal from the district court's dismissal for lack of personal jurisdiction over the Defendant-Appellee, Clayton Santiago ("Santiago"), who was previously employed by the Plaintiff-Appellant, Vapotherm, Inc. ("Vapotherm").   Vapotherm brought suit against Santiago in the District of New Hampshire, alleging that he breached his employment contract and violated a Non-Solicitation of Employees Clause by encouraging three Vapotherm employees to leave the company and join him at his new employment, Vero Biotech, LLC ("Vero").   We affirm.

## I. Background

Santiago was employed by Vapotherm for approximately four years, beginning in January 2016 and ending in February 2020. Vapotherm is a publicly traded medical device manufacturing company.   It is a Delaware corporation with its principal place of business in New Hampshire.   Santiago was employed primarily as an account manager for Vapotherm, and was specifically assigned to the territory within the State of Georgia.[1]   Throughout the entirety of his employment with Vapotherm and at all other relevant

---

[1]    Santiago held various roles at Vapotherm, including account manager, principal account manager, sales director, regional business director, and account executive.  In these roles, he focused on selling Vapotherm's product, the Precision Flow, within Florida and Georgia.  He also supervised employees on both the sales team, which sold the product, and the clinical team, which expanded its use in hospitals.

times, Santiago resided in Georgia. In February 2020, Santiago left Vapotherm to work for Vero, and continues to work there as a Regional Engagement Director.

Prior to beginning his employment with Vapotherm, Santiago signed a "Confidentiality, Non-Compete, and Assignment of Inventions Agreement" ("Agreement"). The Agreement included a choice-of-law clause for the State of Maryland but did not include a forum selection clause. Among other things, the Agreement contained a Non-Solicitation of Employees Clause, which prohibited Santiago from "solicit[ing] or encourag[ing] any employee of the Company to terminate his or her employment with the Company or to accept employment with any subsequent employer with whom Employee is affiliated in any way" throughout his employment and for one year thereafter. The Agreement was signed by Santiago and John Landry, Vapotherm's Chief Financial Officer ("CFO").

Vapotherm alleges in its complaint that Santiago violated the non-solicitation clause of the Agreement by encouraging three of its former employees to join him at Vero after he left Vapotherm. These three employees -- Benjamin Lonsway ("Lonsway"), Ryan Philpot ("Philpot"), and Kurt Wong ("Wong") -- were all clinical managers for Vapotherm during their employment.[2] Lonsway was based in Georgia, while Wong and Philpot were both

---

[2] As clinical mangers, Lonsway, Philpot, and Wong provided training and support to hospitals that use Vapotherm's product.

- 3 -

based in Florida. Santiago knew all three employees, and indeed supervised Lonsway and Wong for a few months. He later worked in an oversight role with all three. On November 24, 2020, Lonsway, Philpot, and Wong all submitted their letters of resignation to Vapotherm and subsequently began working for Vero as clinical educators.[3] Vapotherm alleges that Santiago solicited these employees to leave the company and join him at Vero in violation of the Agreement.

During the course of his employment with Vapotherm, Santiago had limited contact with the State of New Hampshire, primarily arising from his communications with the company's headquarters in Exeter. Santiago testified in his deposition that during his four-year period of employment with Vapotherm, he visited New Hampshire five to seven times to attend corporate events, and in total spent approximately two weeks there. Santiago communicated with Vapotherm's customer service representative, located in New Hampshire, about once a month to process purchase orders and other paperwork. He also communicated infrequently with Vapotherm's technical support as well as its human resources department. The product which Santiago sold, the Precision Flow, was manufactured in New Hampshire. He was paid via direct deposit

---

[3] As clinical educators, the three install Vero's product in hospitals and provide education and training to the hospital's employees.

by Vapotherm, and stated in his deposition that he was unsure where Vapotherm's banks were located.

Apart from these contacts, Santiago's work for Vapotherm was primarily focused in the Southeast of the United States. During the hiring process, after being contacted by a recruiter, Santiago was interviewed in Atlanta, Georgia and Chicago, Illinois. Throughout his employment, his direct supervisors were located in Charleston, South Carolina. Santiago oversaw the company's operations and employees located in Georgia and Florida.

Vapotherm originally filed suit against both Vero[4] and Santiago in the District of New Hampshire, alleging that Santiago had violated the Agreement's non-solicitation clause, and brought claims against him for breach of contract, intentional interference with contractual relations, and unjust enrichment, as well as requests for injunctive relief, specific performance, and a declaratory judgment that Santiago breached the Agreement. Following Santiago's challenge to personal jurisdiction over him, the district court ordered limited jurisdictional discovery.[5] Upon

---

[4] Vapotherm voluntarily dismissed Vero following a motion to dismiss for lack of subject matter jurisdiction that contended that both Vapotherm and Vero were New Hampshire citizens.

[5] Though Santiago did not file a motion to dismiss for lack of personal jurisdiction, the district court construed his "Motion to Stay Proceeding on Preliminary Injunction Until the Existence of Personal Jurisdiction of the Court Can Be Determined" as a challenge to personal jurisdiction. The court ordered briefing and discovery on the jurisdictional issue, and stated it would resolve said issue first. Following the district court's

conclusion thereof, the district court agreed with Santiago. This appeal followed.

## II. **Discussion**

### A. **Standard of Review**

"When a court's personal jurisdiction over a defendant is contested, the plaintiff has the ultimate burden of showing by a preponderance of the evidence that jurisdiction exists." Adams v. Adams, 601 F.3d 1, 4 (1st Cir. 2010) (citing Ealing Corp. v. Harrods Ltd., 790 F.2d 978, 979 & n.1 (1st Cir. 1986)). "Faced with a motion to dismiss for lack of personal jurisdiction, a district court 'may choose from among several methods for determining whether the plaintiff has met [its] burden.'" Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007) (alteration in original) (quoting Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50-51 (1st Cir. 2002)). Here, the district court applied the prima facie method, using the parties' proffered evidence to determine whether personal jurisdiction over Santiago was proper. The parties engaged in limited discovery as to the jurisdictional issue. We review both the use of the prima facie method and the decision to grant the motion to dismiss de novo. Id.

example, we refer to the proceedings as the court's action on a motion to dismiss.

Neither party disputes the district court's use of the prima facie method to resolve the motion to dismiss for lack of personal jurisdiction. However, Vapotherm argues that the district court applied the incorrect standard by weighing evidence, making findings of fact, and ignoring its evidentiary proffers in support of personal jurisdiction over Santiago. Vapotherm alleges that the district court should have construed its evidence "in the light most congenial to [its] jurisdictional claim." Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998). Vapotherm further adduces that crediting Santiago's version of the events is the only way the district court could have reached its conclusion.

The prima facie approach does not require that we "credit conclusory allegations or draw farfetched inferences." Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994). Instead, "[t]he prima facie showing of personal jurisdiction must be based on evidence of specific facts set forth in the record." Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992) (citing Kowalski v. Doherty, Wallace, Pillsbury & Murphy, 787 F.2d 7, 9 (1st Cir. 1986)). "Although the burden of proof is light, [the plaintiff] may not rely on the mere allegations of its complaint, but must point to specific facts in the record that support those allegations." Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 8 (1st Cir. 2002) (citing

Daynard, 290 F.3d at 51). Vapotherm "must go beyond the pleadings and make affirmative proof." Boit, 967 F.2d at 675 (quoting Chlebda v. H.E. Fortna & Bro., 609 F.2d 1022, 1024 (1st Cir. 1979)).

The district court correctly applied the prima facie standard in its decision. The majority of Vapotherm's arguments on this point seem to concern the district court's ultimate conclusion as to the motion to dismiss rather than its method of reaching that conclusion. Specifically, Vapotherm relied primarily on Santiago's deposition testimony and its complaint to establish important jurisdictional matters, such as where Santiago was paid from and where his employment contract was executed, rather than providing affirmative proof and developing specific record facts to support its argument on these points. As we shall discuss henceforth, the district court properly considered the limited evidence Vapotherm proffered in ruling on the motion to dismiss.

## B. **Personal Jurisdiction**

The district court found that there were insufficient minimum contacts to exercise personal jurisdiction over Santiago in New Hampshire. Neither party disputes the district court's finding that there is no general in personam jurisdiction over Santiago. Therefore, the district court only evaluated the exercise of specific personal jurisdiction over him.

- 8 -

In a case such as this one, the federal court sitting in diversity must determine whether the defendant's contacts with the state satisfy both the state's long-arm statute as well as the Due Process Clause of the Fourteenth Amendment. Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995). New Hampshire's long-arm statute permits jurisdiction over a defendant who "transacts any business within [New Hampshire]" or "commits a tortious act within [New Hampshire]." N.H. Rev. Stat. Ann. § 510:4, I. "[T]he Supreme Court of New Hampshire interpreted the latter phrase to include situations where a defendant's out-of-state activity results in an injury within New Hampshire," precisely what Vapotherm alleges occurred here. Sawtelle, 70 F.3d at 1388 (citing Estabrook v. Wetmore, 529 A.2d 956, 958 (N.H. 1987)).

In any event, New Hampshire's long-arm statute has been interpreted to allow jurisdiction over out-of-state defendants such as Santiago "to the full extent that the statutory language and due process will allow." Sawtelle, 70 F.3d at 1388 (quoting Phelps v. Kingston, 536 A.2d 740, 742 (N.H. 1987)). Therefore, we direct our attention to whether exercising personal jurisdiction over Santiago in New Hampshire satisfies the constitutional requirements under the Due Process Clause of the Fourteenth Amendment. Id.

To exercise personal jurisdiction over a nonresident defendant, the defendant must "have certain minimum contacts with

it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). A plaintiff attempting to establish specific personal jurisdiction over an out-of-state defendant must demonstrate that:

> (1) [its] claim directly arises out of or relates to the defendant's forum-state activities; (2) the defendant's contacts with the forum state represent a purposeful availment of the privilege of conducting activities in that state, thus invoking the benefits and protections of that state's laws and rendering the defendant's involuntary presence in that state's courts foreseeable; and (3) the exercise of jurisdiction is ultimately reasonable.

Scottsdale Cap. Advisors Corp. v. The Deal, LLC, 887 F.3d 17, 20 (1st Cir. 2018) (citing A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 59 (1st Cir. 2016)). Considering the above-named requirements for specific personal jurisdiction in its discussion, focusing primarily on the first two, the district court found that Vapotherm failed to establish sufficient facts to support the inference that personal jurisdiction over Santiago in New Hampshire would be constitutional. We discuss the three requirements seriatim.

## 1. **Relatedness**

First, we consider whether Vapotherm has offered evidence establishing that its claims "directly arise[] out of or relate[] to the defendant's forum-state activities." Id.

Vapotherm's claims sound in both contract and tort so we consider relatedness for both types of cases in turn.

For breach of contract claims, "we ask whether the defendant's activity in the forum state was 'instrumental either in the formation of the contract or its breach.'" Adelson, 510 F.3d at 49 (quoting Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 289 (1st Cir. 1999)). To argue that it was, Vapotherm primarily relies on the fact that Santiago knowingly entered into an employment relationship with a New Hampshire-based company and subsequently breached that contract.

Nonetheless, looking closely at the matter, Santiago's activity in New Hampshire was not instrumental in the formation of the contract nor its breach. It remains unclear where exactly the contract was executed. Vapotherm alleges that the contract was executed in New Hampshire when CFO John Landry signed it there, relying on (1) the signature of Landry on Santiago's employment contract and (2) Santiago's deposition testimony that he "believed" that the CFO worked out of Exeter, New Hampshire, but that he was "not 100% sure on that" and that "for all [he] kn[e]w," he might have worked from home. Neither party, however, disputes that Santiago did not sign the contract in New Hampshire. As the district court correctly found, this does not support a finding of relatedness to New Hampshire in the formation of the employment contract. See Adams, 601 F.3d at 6 ("This is not a case in which

- 11 -

the specific terms of a contract were 'formalized and entered into' in the forum state." (quoting Adelson, 510 F.3d at 49)); see also Boit, 967 F.2d at 674, 678, 680 (affirming a dismissal for lack specific personal jurisdiction under the prima facie standard where "[plaintiffs'] allegation that [defendant] sold [a] hot air gun to [a codefendant with ties to the forum state] directly [was] the cornerstone of their contention that [it] should have 'reasonably anticipated being haled' into court in [the forum state]" but "the record no more support[ed] [that] inference . . . than it d[id] an inference that [defendant] sold to another company without knowledge that it might sell to [the codefendant]"). Moreover, Santiago was not "subject to 'substantial control and ongoing connection to [the forum state] in the performance of this contract.'" Adams, 601 F.3d at 6 (alteration in original) (quoting Phillips v. Prairie Eye Ctr., 530 F.3d 22, 27 (1st Cir. 2008)). Although he contacted Vapotherm's New Hampshire headquarters for general administrative matters, he was not subject to substantial control there -- his direct supervisors were located in South Carolina, and their supervisor was based in Chicago.

As to whether Santiago's activities in New Hampshire were instrumental to the contract's breach, Vapotherm fares no better. None of the three employees that Santiago allegedly solicited worked in New Hampshire, and none of the conversations

that would constitute solicitation are alleged to have taken place in New Hampshire. As the district court correctly held, Vapotherm has proffered no evidence which links Santiago's solicitation of Lonsway, Philpot, and Wong to New Hampshire.[6]

It is also instructive to consider our prior personal jurisdiction precedent regarding employees and employers from different states in comparison to the facts now before us. See Cossart v. United Excel Corp., 804 F.3d 13 (1st Cir. 2015); C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59 (1st Cir. 2014); Adelson, 510 F.3d 43. In Cossart, we found relatedness (and ultimately personal jurisdiction) in Massachusetts over an out-of-state corporation because the contract was "procured with a Massachusetts resident to be performed by the resident primarily from Massachusetts." 804 F.3d at 20. That factual scenario is markedly different from Santiago, a Georgia resident working primarily in Georgia and Florida for a New Hampshire company

---

[6]     Vapotherm analogizes in its brief Bluetarp Financial, Inc. v. Matrix Construction Co., 709 F.3d 72 (1st Cir. 2013) to highlight the fact that here as well, Santiago knowingly returned the contract to Vapotherm in the forum state, knowing it would be executed there. Id. at 81 ("Most notably, faxing the credit application to [the forum state] is what created the contract that [the plaintiff] claims was breached."). However, as established supra, Vapotherm has not offered evidence that the contract was executed in New Hampshire, and has not even established that Santiago mailed the contract there after signing it. Moreover, in Bluetarp, there were other pertinent factors linking the contract to the forum state that are not present here, such as a choice-of-law clause and a permissive forum-selection clause for the forum state. Id.

- 13 -

incorporated in Delaware. This case also differs from C.W. Downer & Co., where we found relatedness based on an "ongoing connection with [the forum state] in the performance under the contract." 771 F.3d at 66. Similarly, in Adelson, we found relatedness satisfied as to an international employee because the contract was entered into in the forum state, specific terms of employment were negotiated and finalized in the forum state at an in-person meeting, and the contract itself subjected the employee to "substantial control and ongoing connection to [the forum state] in the performance of this contract." 510 F.3d at 49. In contrast, the evidence offered by Vapotherm at this stage -- primarily Santiago's deposition -- does not establish that Santiago traveled to New Hampshire to formalize the employment contract or that the details of his contract were negotiated or discussed there. The CFO merely signed it in New Hampshire. Santiago was also not subject to substantial control or ongoing connection in New Hampshire. His contacts with the forum state throughout the duration of the employment agreement were limited and infrequent, and primarily for administrative or company-wide matters.

With regards to the tort claim of intentional interference with contract relations, Vapotherm argues that it properly established jurisdiction by showing that Santiago's acts of soliciting employees caused injury within New Hampshire by financially harming a New Hampshire-based company "even if the

injury [was] the result of acts outside the state." See N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 24 (1st Cir. 2005) (quoting Hugel v. McNell, 886 F.2d 1, 3 (1st Cir. 1989)). As discussed supra, this seemingly satisfies New Hampshire's long-arm statute. However, the exercise of personal jurisdiction over Santiago must still comport with the requirements under the Due Process Clause of the Constitution. See id. ("[H]aving satisfied the requirements of the New Hampshire long-arm statute, our inquiry now turns to the question of whether the exercise of jurisdiction over [the defendant] in New Hampshire violates the Federal Constitution.").

To determine relatedness for tort claims under the requirements of the Due Process Clause, we "must probe the causal nexus between the defendant's contacts and the plaintiff's cause of action." Phillips Exeter Acad., 196 F.3d at 289. Again we consider, specifically in regards to the tort claim, whether the tort claim "arise[s] out of or relate[s] to the defendant's contacts with the forum." Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1026 (2021) (emphasis omitted) (quoting Bristol-Myers Squibb Co. v. Superior Ct. of Cal., 137 S. Ct. 1773, 1780 (2017)). Vapotherm alleges that the district court incorrectly applied the standard for relatedness, as articulated by the Supreme Court in Ford Motor Co., by requiring Vapotherm to demonstrate that its injury would not have occurred "but for"

Santiago's forum-state activity. The Court in Ford stated that "a strict causal relationship between the defendant's in-state activity and the litigation" is not necessary, however, it also noted that "the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." Id.

Even considering the test set forth in Ford, Vapotherm relies too heavily on the fact that Santiago's alleged solicitation of Lonsway, Philpot, and Wong led to injury in the forum state as the primary basis for relatedness of the tort claim.[7] The cases establish that in-state injury alone is not sufficient under the Due Process Clause to prove relatedness for tort claims. See Phillips Exeter Acad., 196 F.3d at 291 (Noting "[a]s to Exeter's tort claim" that "the receipt of payment was merely an in-forum effect of an extra-forum breach and, therefore, inadequate to support a finding of relatedness"); Mass. Sch. of L., 142 F.3d at 36 ("We have wrestled before with this issue of whether the in-

---

[7]     Vapotherm also argues that Santiago's tortious acts were directed at the forum state, and cites Calder v. Jones, 465 U.S. 783 (1984), to argue that this is sufficient to establish personal jurisdiction. The factual situation here, however, differs significantly from Calder, a defamation case. There, the Court held that "[the forum state] is the focal point both of the story and of the harm suffered," despite the fact that the newspaper that published the story, the Enquirer, was based outside of the forum state. Id. at 785, 789. Here, contrary to Vapotherm's allegations, Santiago's tortious acts were not directed at the forum state as none of the three solicited employees worked in New Hampshire nor were they solicited there. Therefore, all that remains connecting Santiago's tortious acts to New Hampshire is the in-forum harm that Vapotherm alleges it suffered.

- 16 -

forum effects of extra-forum activities suffice to constitute minimum contacts and have found in the negative."); Walden, 571 U.S. at 289-90 ("[M]ere injury to a forum resident is not a sufficient connection to the forum. Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum state."); cf. Sawtelle, 70 F.3d at 1390-91 (finding weak relatedness when "the gravamen of the [plaintiff's] claim is that they suffered in New Hampshire the 'effects' of the defendants' negligence committed elsewhere"); Ford, 141 S. Ct. at 1032 (concluding that plaintiffs' allegations that "they suffered in-state injury because of defective products that [the company] extensively promoted, sold and serviced in [the forum states]" met the relatedness prong). The actions which form the basis of the tort claim, Santiago's alleged solicitation of Lonsway, Philpot, and Wong, do not arise out of or relate to Santiago's contacts with New Hampshire. Instead, the three employees are connected to Santiago through their contacts in Florida and Georgia where they all worked throughout the duration of their employment with Vapotherm.

For the foregoing reasons, we agree with the district court that the evidence for relatedness on both the contract and tort claims is threadbare at best and insufficient to establish personal jurisdiction.

## 2. **Purposeful Availment**

Though we have determined relatedness is not met and therefore need not examine at length the other two jurisdictional requirements, we take this opportunity to briefly explain that purposeful availment also has not been demonstrated here.  "The two key focal points of this concept are voluntariness and foreseeability."  Adelson, 510 F.3d at 50.  For voluntariness, "the contacts must be voluntary and not based on the unilateral actions of another party."  Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).  As to foreseeability, the defendant's contacts in the forum state must give him notice such that he could "reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

Vapotherm contends that Santiago purposefully availed himself of New Hampshire law by entering into a contract there and maintaining an employment relationship with a New Hampshire company for four years.  Vapotherm also makes much of the fact that Santiago interfered with the employment contracts of Lonsway, Philpot, and Wong, all of which were governed by New Hampshire law.  Vapotherm fails to establish, however, that Santiago was aware of the choice-of-law clauses within the three employees' contracts.  See Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 10 (1st Cir. 2009) (finding purposeful availment when the defendant was "fully aware of the . . . Employee Agreement,

- 18 -

including its [choice-of-law and forum-selection] provisions"). Indeed, Santiago's own employment contract had a choice-of-law clause for Maryland, further indicating a lack of notice that he would be haled into New Hampshire to defend himself. See Adams, 601 F.3d at 8 (declining to find purposeful availment when contract's governing law was non-forum state); Burger King Corp., 471 U.S. at 482 (finding purposeful availment based on a forum state choice-of-law provision combined with defendant's relationship to the state).

Santiago's connections with New Hampshire differ significantly from those of the defendant in Adelson, where the court held that being haled into the forum state was both voluntary and foreseeable. 510 F.3d at 50-51. In Adelson, we relied on the fact that the out-of-state defendant had sought out employment in the forum state, formalized and executed his employment agreement there, his business card indicated his relationship to the forum state, and all of his financials were processed through that state. Id. at 50. Here, Santiago was recruited to Vapotherm rather than seeking it out, was interviewed in Georgia and Illinois, formalized his portion of the employment agreement in Georgia, contacted New Hampshire primarily for technical and customer support, and only traveled there for company-wide corporate events. As Santiago indicated in his deposition, "[T]he majority of our business, the activities, the focus, the customers, 99-plus percent of

everything that we do is in the accounts . . . .  So all of the focus is in your territories," and his accounts were located in the Southeast of the United States, specifically Florida and Georgia.  Based on these facts, the district court properly found that Santiago did not avail himself "of the privilege of conducting activities in [New Hampshire], thereby invoking the benefits and protections of [its] laws and making [his] involuntary presence before the state's courts foreseeable."  United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992).

### 3. **Reasonableness**

The final requirement needed to exercise personal jurisdiction over a defendant is that such exercise must be fair and reasonable.  Cossart, 804 F.3d at 22 (citing C.W. Downer & Co., 771 F.3d at 69).  Vapotherm asserts that exercising jurisdiction over Santiago is reasonable because New Hampshire has a strong interest in protecting its corporate residents and Santiago has not shown that he would be unable to litigate in New Hampshire, and indeed has already so litigated.

As we explicated supra, Vapotherm did not make a prima facie showing as to either relatedness or purposeful availment. Therefore, we need not reach the reasonableness analysis.  See Sawtelle, 70 F.3d at 1394 ("Moreover, we note that a failure to demonstrate the necessary minimum contacts eliminates the need

even to reach the issue of reasonableness"); <u>Adams</u>, 601 F.3d at 8 ("We hold that [the plaintiff] has not demonstrated . . . sufficient purposeful availment to allow for the exercise of jurisdiction. Thus, we need not proceed to consider the reasonableness prong of the analysis.").

## III. **Conclusion**

For the foregoing reasons, the judgment of the district court is

**AFFIRMED**.