# United States Court of Appeals
## For the First Circuit

No. 09-1425

SZYMAS LECHOSLAW,

Plaintiff, Appellant,

v.

BANK OF AMERICA, N.A.,
BANK HANDLOWY W WARSZAWIE, SA,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor, IV, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Howard, Circuit Judges.

Timothy J. Burke, with whom Burke & Associates, was on brief
for appellant.
Donn A. Randall, with whom Mary Ellen Manganelli and Bulkley,
Richardson and Gelinas, LLP, were on brief for appellees.

August 30, 2010

**TORRUELLA, <u>Circuit Judge</u>.** This is a case about a missing bank check. Appellant Szymas Lechoslaw ("Lechoslaw") purchased a Fleet Bank ("BoA")[1] bank check in Worcester, Massachusetts and attempted to cash it at a bank in Poland. The check was apparently lost in transit between Poland and BoA's offices in New Jersey and it took a few months before the money was finally in Lechoslaw's account in Poland. Claiming that the four-and-a-half month delay in receiving his $31,787.34 disrupted the construction of a motel and restaurant in Poland and caused him severe emotional distress, Lechoslaw sued to recover consequential damages for his loss. Following some procedural maneuvering, the case comes to us on appeal from a jury verdict as to some counts and a directed verdict as to others, all in favor of defendants. After due consideration, we affirm.

## I. <u>Facts[2] and Procedural History</u>

On July 28, 2000, Lechoslaw visited a BoA bank branch in Worcester, Massachusetts. Lechoslaw testified that he wanted to transfer $31,787.34 to Poland. Adam Glass ("Glass"), the BoA customer representative who helped Lechoslaw with the transaction, testified that because Lechoslaw did not have all of the

---

[1] Fleet Bank was subsequently acquired by Bank of America ("BoA"), one of the defendants in this case. For clarity, we will refer to Fleet as BoA.

[2] "We recite the facts in the light most favorable to the jury verdict." <u>Anaya-Burgos</u> v. <u>Lasalvia-Prisco</u>, 607 F.3d 269, 270 n.1 (1st Cir. 2010).

information necessary to send a wire transfer to Poland, an official bank check was his only option. Lechoslaw left the bank with an official check in the amount of $31,787.34. There was conflicting testimony at trial as to what transpired in the transaction. Lechoslaw testified that he asked Glass how long it would take to receive the funds from the check and stated that Glass said it would take seven to eight days to receive payment. Glass testified that he was never asked this question by Lechoslaw and that if he had, he would not have been able to answer it. According to Glass' testimony, had he been asked this question he would have directed Lechoslaw to inquire with the bank at which he intended to deposit the check.

On October 3, 2000, Lechoslaw presented the bank check for collection at Bank Handlowy w Warszawie ("Bank Handlowy") in Poznan, Poland. At trial, Lechoslaw testified that he intended to use the proceeds of the check for a motel/restaurant project in Poznan, something that was not told to BoA or any of its agents prior to the sale of the check. While there was no testimony about this at trial, Lechoslaw wanted to introduce evidence that Bank Handlowy had sent the check to a BoA office in New Jersey for collection via the Polish mail system. No evidence was ever adduced that BoA actually received the check.

At some point in early December 2000, Bank Handlowy contacted BoA requesting information as to why the check had not

been paid.  On December 4, 2000, a BoA representative notified Bank Handlowy that they had no record of ever receiving the check, which was the reason it had not been paid.  After some further communication between the banks, on December 21, 2000, Bank Handlowy sent BoA a faxed copy of the front and back of the check as well as an indemnity letter[3] as requested by BoA.  On January 30, 2001, BoA forwarded the value of the check to Citibank New York in favor of Bank Handlowy.  The funds were eventually deposited in Lechoslaw's account at Bank Handlowy on February 2, 2001.

## A. Procedural History

Lechoslaw filed an action in Worcester Superior Court against BoA, Citibank, and Bank Handlowy on October 3, 2003.[4]  The Superior Court issued a tracking order on October 8, 2003, in which it established March 1, 2004 as the final date for parties to respond to Lechoslaw's complaint and to file motions under Massachusetts Rules of Civil Procedure 12, 15, 19, and 20.  On November 23, 2003, Bank Handlowy answered Lechoslaw's complaint, asserting, among others, a defense of lack of personal jurisdiction.  Nevertheless, Bank Handlowy became involved in

---

[3]  The indemnity letter assured that BoA was covered by Bank Handlowy in case it had to pay twice on the check.

[4]  At the time of events, Bank Handlowy was doing business as Citibank Poland.  Citibank, N.A. was dismissed from the case and that ruling is not at issue here.

-4-

discovery, specifically by: (1) filing its first set of interrogatories and First Request for the Production of Documents to Lechoslaw, (2) negotiating an extension of time to respond to Lechoslaw's discovery requests, and (3) requesting a confidentiality agreement from Lechoslaw. On May 28, 2004, Lechoslaw filed an unopposed motion to amend his complaint. In his amended complaint, Lechoslaw added a chapter 93A count against Bank Handlowy. See Mass. Gen. Laws ch. 93A. On July 20, 2004, Bank Handlowy sought leave from the Superior Court to file a motion to dismiss for lack of personal jurisdiction, citing Lechoslaw's amended complaint. The Superior Court denied Bank Handlowy's motion on August 23, 2004, but after reconsideration, allowed it. Bank Handlowy was dismissed from the case for lack of personal jurisdiction on December 2, 2004.

After continued discovery, on January 18, 2007, BoA removed the case to the United States District Court for the District of Massachusetts, pursuant to 28 U.S.C. §§ 1441 and 1446 and 12 U.S.C. § 632. On January 31, 2007, Lechoslaw filed a motion for entry of separate judgment under Federal Rule of Civil Procedure 54(b) against Bank Handlowy and in the alternative, requesting that the District Court reverse the dismissal of Bank Handlowy from the case for lack of personal jurisdiction. The District Court denied the motion on July 23, 2007.

Lechoslaw and BoA filed cross motions for summary judgment in the District Court, which treated BOA's motion as a motion for reconsideration on the issues previously decided by the Superior Court, and as a motion for summary judgment otherwise. After consideration of both motions, the District Court denied Lechoslaw's motion and allowed BoA's motion as to some of the claims, eventually letting proceed against BoA Lechoslaw's claim for negligence grounded on § 4-202 of the Uniform Commercial Code, a claim for negligent misrepresentation, and the chapter 93A claim.

In November 2008, Lechoslaw filed a motion for issuance of a trial subpoena to Bank Handlowy seeking to invoke the provisions of the Hague Convention on Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Convention"). 23 U.S.T. 2555, 1972 WL 122493 (1968). The District Court denied the motion on December 18, 2008.

On January 12, 2009, after a request by Lechoslaw, the District Court granted leave for Lechoslaw to file an amended complaint. On February 21, 2009, Lechoslaw filed his amended complaint alleging seven counts against BoA: (1) negligence in the handling of the check; (2) breach of contract in the sale of the check; (3) breach of contract generally; (4) breach of the implied covenant of good faith and fair dealing; (5) deceit/intentional misrepresentation; (6) negligent misrepresentation, and (7)

violation of chapter 93A.[5,6]  In his amended complaint, Lechoslaw essentially added an intentional misrepresentation claim against BoA.

On February 5, 2009, Lechoslaw served and filed his final witness list, identifying BoA's counsel, Donn Randall and Mary Ellen Manganelli, as witnesses.[7]  BoA filed a motion in limine to strike BoA's counsel from the witness list.  After oral argument, the District Court granted BoA's motion in limine on February 13, 2009.

Trial began on February 23, 2009 and continued through February 27.  During the trial, the District Court entered directed verdicts for BoA on amended counts 1, 2, 3, and 4, to the extent that summary judgment was not already granted.  The District Court let the claims on negligent and intentional misrepresentation (claims 5 and 6) go to the jury, which returned a verdict for BoA on both claims.  The District Court then directed a verdict in favor of BoA on the 93A claim (claim 7).  Lechoslaw now appeals the

---

[5]  The Amended Complaint incorrectly assigned the number 8 to the claim alleging a violation of Mass. Gen. Laws ch. 93A.  As there was no seventh claim stated, we have assumed that the 93A claim was the seventh.

[6]  Although the District Court had denied Lechoslaw's attempts to bring Bank Handlowy back into the case, the amended complaint also alleged four claims against Bank Handlowy: (1) negligence; (2) breach of contract; (3) infliction of emotional distress; and (4) a 93A claim.

[7]  BoA's counsel had also represented Bank Handlowy when it was part of the case.

dismissal of Bank Handlowy as a party to the litigation as well as various evidentiary and procedural rulings by the District Court which Lechoslaw claims precluded him from making his case.

## II. Discussion

### A. Lechoslaw's Claims Against Bank Handlowy

Lechoslaw appeals the dismissal of Bank Handlowy from the case for lack of personal jurisdiction claiming that the trial court had both general and specific jurisdiction over Bank Handlowy, and in the alternative, that Bank Handlowy waived objections to any lack of personal jurisdiction over it.

#### 1. Personal Jurisdiction

We begin with Lechoslaw's argument that Bank Handlowy's contacts with Massachusetts are sufficient for personal jurisdiction under its long arm statute. Mass. Gen. Laws ch. 223A §§ 3(a) and (d). "When a court's personal jurisdiction over a defendant is contested, the plaintiff has the ultimate burden of showing by a preponderance of the evidence that jurisdiction exists." Adams v. Adams, 601 F.3d 1, 4 (1st Cir. 2010); Conn. Nat'l Bank v. Hoover Treated Wood Prods., Inc., 638 N.E.2d 942, 944 (Mass. App. Ct. 1994). As there was no hearing on the jurisdictional question, we normally assume that the court used the prima facie method in deciding the jurisdictional question. Adams, 601 F.3d at 4. This inquiry asks "whether the plaintiff has proffered evidence which, if credited, is sufficient to support

-8-

findings of all facts essential to personal jurisdiction." Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008). "We proceed directly to the constitutional analysis, because the Supreme Judicial Court of Massachusetts has interpreted the state's long-arm statute as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States." Id. (internal quotation marks and citations omitted). "We review the court's factual findings for clear error, but our review of the court's legal conclusions as to whether its findings support the existence of personal jurisdiction is always non-deferential and plenary." Adams, 601 F.3d at 4-5.

> The due process clause imposes several requirements on the exercise of personal jurisdiction over out-of-state defendants. First, the defendant must have sufficient "minimum contacts" with the state. For specific jurisdiction, the plaintiff's claim must be related to the defendant's contacts. For general jurisdiction, in which the cause of action may be unrelated to the defendant's contacts, the defendant must have continuous and systematic contacts with the state. Second, for either type of jurisdiction, the defendant's contacts with the state must be purposeful. And third, the exercise of jurisdiction must be reasonable under the circumstances.

Harlow v. Children's Hosp., 432 F.3d 50, 57 (1st Cir. 2005).

Bank Handlowy is a Polish bank with all of its branches in Poland. All customers of Bank Handlowy are required to open their accounts at a bank branch in Poland. Bank Handlowy does not allow bank accounts to be opened by mail or online. It is

undisputed that Bank Handlowy does not advertise its financial services in Massachusetts nor own any real property or pay taxes in Massachusetts. The only fact that Lechoslaw asserts to support general jurisdiction is that fourteen individual customers and twenty-five corporate customers have provided Bank Handlowy with their Massachusetts addresses. But Lechoslaw has failed to adduce evidence that Bank Handlowy purposely sought out these customers, such that the bank could reasonably foresee the need to invoke the protections and benefits of the forum, or that these constitute continuous or systematic contacts. Haddad v. Taylor, 588 N.E.2d 1375, 1377 (Mass. App. Ct. 1992).[8] More specifically, the transaction at issue took place in Poland and the check, assuming it was mailed, was mailed to a New Jersey address and not one in Massachusetts.

Even if we assume that these contacts "were minimally sufficient for either specific or general jurisdiction," Harlow,

---

[8] Lechoslaw also argues that because at the time the transaction took place Bank Handlowy was doing business as Citibank Poland, the court should have taken judicial notice that "Citibank is a large, multinational financial institution which solicits business throughout the world." App. Br. at 23-24. Although not explained by Lechoslaw, we assume that Citibank Poland is a subsidiary of, or otherwise connected to, Citibank, N.A. Just like when it made this argument before the Superior Court and the District Court, Lechoslaw has failed to explain why this court should attribute the actions of Citibank, N.A. to Citibank Poland. See Nisselson v. Lernout, 469 F.3d 143, 154 (1st Cir. 2006)(finding that under Massachusetts law, a parent corporation and its wholly-owned subsidiary are generally regarded as separate and distinct entities); My Bread Baking Co. v. Cumberland Farms, Inc., 233 N.E.2d 748, 751 (Mass. 1968) (same).

432 F.3d at 66, there is no evidence that these contacts were purposeful. Finally, it would be unreasonable in this case to subject Bank Handlowy to the jurisdiction of the Massachusetts courts as it is a foreign bank with no agents in Massachusetts and which does not conduct any business in Massachusetts.

Lechoslaw has failed to meet his burden of proving that Bank Handlowy met the requirements for the exercise of personal jurisdiction.

## 2. **Waiver**

"Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived." Insurance Corp. of Ireland Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703 (1982). It is clear that "a defense of lack of jurisdiction over the person is waived if not timely raised in the answer or a responsive pleading." Id. (quoting Fed. R. Civ. P. 12(h)) (internal quotations and marks omitted); see also Mass. R. Civ. P. 12(h) (same). However, even if the issue of personal jurisdiction is raised in its answer or other responsive pleading, a party may nevertheless waive jurisdiction if it makes voluntary appearances and contests the case at all stages until judgment is rendered. Ingersoll v. Ingersoll, 202 N.E.2d 820, 821 (Mass. 1964). Those are the two extremes; in between lies a wide gray gulf. Lechoslaw

argues that in this case we should find that Bank Handlowy's conduct lies on the side of waiver.

Lechoslaw contends that even though Bank Handlowy included lack of personal jurisdiction as a defense in its answer, it nevertheless consented to jurisdiction and admitted to doing so when it filed its motion for leave to file a Rule 12 motion late in the Superior Court. In that motion, Bank Handlowy stated:

> Based on the small dollar value of this case and the expense involved in researching, preparing, filing and arguing complex Motions such as a Motion to Dismiss for Lack of Personal Jurisdiction, Bank Handlowy decided to have an Answer filed on its behalf instead of challenging this court's ability to exercise jurisdiction over it.

Lechoslaw also argues that Bank Handlowy is anyway precluded by its actions and by laches from raising the issue of personal jurisdiction because it propounded discovery requests, negotiated extensions to the time required to respond to the discovery requests, solicited a confidentiality agreement, and because it filed an assented-to motion to expand the tracking order before filing its Rule 12 motion. Like both trial courts that had occasion to rule on this issue, we find these arguments to be without merit.

We begin with the issue of the standard of review. A determination as to "waiver [of personal jurisdiction is] within the discretion of the trial court, consistent with its broad duties in managing the conduct of cases pending before it." United States

v. Ziegler Bolt & Parts Co., 111 F.3d 878, 882 (Fed. Cir. 1997). Thus, "[o]n appeal, this court defers to the judgment of the trial court on such matters closely associated with the standard functions of the adjudicative process, so long as that judgment is not an abuse of the trial court's discretion. Accordingly, [we review] the trial court's decision on the waiver issue for an abuse of discretion." Id. (internal citations omitted); see also Hamilton v. Atlas Turner, Inc., 197 F.3d 58, 60 (2d Cir. 1999). Both trial courts held that these actions did not constitute waiver and we do not find that they abused their discretion in doing so.

Bank Handlowy's answer to Lechoslaw's complaint included the affirmative defense of lack of personal jurisdiction. The language quoted above, from Bank Handlowy's motion, does not imply that Bank Handlowy had assented to jurisdiction. The quote makes clear that Bank Handlowy contested personal jurisdiction in its answer. It only clarifies the reason why Bank Handlowy chose to file an answer, its first responsive pleading in this case, before it filed a Rule 12 motion. There is nothing the matter with Bank Handlowy's chosen order of filings given that its answer included the personal jurisdiction defense. In addition, the fact that Bank Handlowy assented to a motion to extend the tracking order before it filed its Rule 12 motion is also not reason to find waiver, and

-13-

the cases Lechoslaw cites are not to the contrary.[9]  The trial
court did not abuse its discretion in finding Bank Handlowy did not
waive its defense of lack of personal jurisdiction.

**B. Claims against BoA**

Lechoslaw's brief-in-chief and reply brief ask us to
review three issues regarding its claims against BoA: whether the
District Court erred in (1) excluding admissions of Bank Handlowy's
counsel that the check was mailed, (2) denying Lechoslaw's motions
to be allowed to serve process and conduct discovery in accordance
with the Hague Convention, and (3) dismissing Lechoslaw's 93A
claims.[10]  We address each in turn.

---

[9]  See Farm Credit Bank of Baltimore v. Ferrera-Goitía, 316 F.3d
62, 68 (1st Cir. 2003) ("The Civil Rules incorporate the principle
of implied waiver.  They provide that a defense based on personal
jurisdiction will be deemed waived if not made by a party's first-
filed motion or included in her initial responsive pleading.");
Manchester Knitted Fashions, Inc. v. Amalgamated Cotton Garment &
Allied Indus. Fund, 967 F.2d 688, 691-92 (1st Cir. 1992) (same,
referring to venue).  Lechoslaw's brief and the cases he cites seem
to ignore the fact that Bank Handlowy did raise the personal
jurisdiction defense in its "initial responsive pleading," to wit,
its answer to the complaint.

[10]  Lechoslaw alleges that he is challenging the District Court's
dismissal of his "claims against BoA which arose from its loss of
the check," App. Br. at i.  However, Lechoslaw fails to specify
which claims he is challenging, and instead makes arguments about
what he terms the "embedded evidentiary issues underlying the
erroneous judgment."  Given our resolution of these "embedded"
issues, we find that the District Court did not err in dismissing
any claims against BoA.

## 1. Exclusion of Admissions by Bank Handlowy's Counsel

During the course of one its filings when it was a party to this litigation, Bank Handlowy, through its counsel, made certain admissions regarding the mailing of the check to BoA. After Bank Handlowy was dismissed from the case, Lechoslaw attempted to bring these statements in as nonhearsay because, Lechoslaw claims, they were admissions by a party opponent since Bank Handlowy had the same counsel as BoA. See Fed. R. Evid. 801(d)(2). BoA filed a motion in limine to exclude the statements and the District Court granted it. Lechoslaw objects. BoA counters that these statements are not admissible against it regardless of its common counsel with Bank Handlowy. We agree.

The Federal Rules of Evidence make clear that a statement is not hearsay if "the statement is offered against a party and is . . . a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Fed. R. Evid. 801(d)(2)(D); Gómez v. Rivera Rodríguez, 344 F.3d 103, 116 (1st Cir. 2003). Lechoslaw attempts to confuse the issue by citing cases holding that attorneys serve as agents of their clients. See, e.g., Blake v. Henrickson, 666 N.E.2d 164, 166 (Mass. App. Ct. 1996). There is no question that Bank Handlowy's counsel was its agent, and that BoA's counsel was also its agent. But the fact that both banks shared counsel does not change the application of the rules of

evidence.  Here, Bank Handlowy's attorney made certain statements during its representation of Bank Handlowy.  Those statements may have been admissible against Bank Handlowy if it were a party to this litigation, but it was dismissed.  There was no abuse of discretion on the facts here in the court's exclusion of the statement as offered against BoA.

## 2. Denial of Discovery According to the Hague Convention

Next, Lechoslaw argues that the Superior Court and the District Court both erred in preventing him from taking depositions of Bank Handlowy's agents in accordance with the Hague Convention. The Federal Rules of Civil Procedure provide that depositions may be taken in a foreign country pursuant to any applicable treaty or convention.  Fed. R. Civ. P. 28(b).  Both trial courts denied Lechoslaw's various motions seeking to extend the discovery deadline and to take depositions abroad.  Given the lateness of the request to take depositions and the potential for delay, this call was well within the court's discretion as to trial management. Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 91 (1st Cir. 1996).

Bank Handlowy was dismissed from the case for lack of personal jurisdiction on December 2, 2004.  After three extensions to the tracking order, the discovery deadline for this case was extended to February 28, 2005.  On March 6, 2006, over one year after the deadline for the end of discovery had passed, after cross

motions for summary judgment had been filed by both remaining parties, and after the Superior Court had ruled on some of those motions, Lechoslaw filed his first motion to reopen discovery, extend the discovery deadline, amend the tracking order, and to depose Bank Handlowy under the Hague Convention. Lechoslaw filed essentially this same motion multiple times with the Superior Court and once with the District Court. While the information that Lechoslaw sought in these motions might have been crucial to his case,[11] the Superior Court and later the District Court did not abuse their discretion in failing to reopen discovery over one year after it had closed and after summary judgment motions had been filed in the case. The procedures of the Hague Convention do not come without a significant time cost. "In many situations the Letter of Request procedure authorized by the Convention would be unduly time consuming and expensive, as well as less certain to produce needed evidence than direct use of the Federal Rules." Societé Nationale Industrielle Aérospatiale v. U.S. Dist. Court for the S. Dist. of Iowa, 482 U.S. 522, 542 (1987); see also Int'l Soc'y for Krishna Consciousness, Inc. v. Lee, 105 F.R.D. 435, 450 (S.D.N.Y. 1984) ("[A] number of courts have observed that the Hague Convention is quite slow and costly even when the foreign

---

[11] Lechoslaw sought to obtain an admission from Bank Handlowy or its agents that the check had been mailed through the Polish mail system to BoA. In doing so, he sought to rely upon the presumption of delivery that arises upon the mailing of a letter. See Prudential Trust Co. v. Hayes, 142 N.E. 73, 73 (Mass. 1924).

-17-

government agrees to cooperate"); In Re Bedford Computer Corp., 114 B.R. 2, 6 (Bankr. D.N.H. 1990) (opining that "the only effect of using the Hague Convention rules would be to further delay [this] adversary proceeding").

Lechoslaw waited until almost two years after Bank Handlowy was dismissed from the case to request information from it. Not only that, but at the time Lechoslaw made his first request, discovery had been completed for over a year and cross summary judgment motions had been filed and adjudicated. Lechoslaw should have known that he needed this information from Bank Handlowy much earlier than 2006. Under these circumstances, it was not an abuse of discretion for the courts not to reopen discovery.

### 3. Dismissal of 93A Claims

Lechoslaw's last claim of error is that the District Court should not have directed a verdict against him on his 93A claim because BoA failed to disclose facts which would have led Lechoslaw not to purchase the official check.[12] Chapter 93A

---

[12] We note that on this issue, Lechoslaw's brief-in-chief comes dangerously close to violating our procedural rules by failing to note the appropriate standard of review, Fed. R. App. P. 28(a)(9)(B), and by providing such minimal arguments that we might almost consider them to be waiver of the issue. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). In his reply brief, Lechoslaw cures some of these defects, although his attempts are less than successful because he simply quotes the allegations in his own complaint rather than pointing to evidence in the record to support those allegations. See also Ríos-Jiménez v. Principi, 520 F.3d 31, 39 n.5 (1st Cir. 2008)(stating that an appellant's argument must

punishes "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A § 2(a). As relevant to Lechoslaw's appeal, a business violates 93A if it "fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction." 940 C.M.R. § 3.16; <u>V.S.H. Realty, Inc.</u> v. <u>Texaco, Inc.</u>, 757 F.2d 411, 416 (1st Cir. 1985) (applying regulation to businesses). "Our review of the directed verdict is de novo." <u>Chamberlin</u> v. <u>Town of Stoughton</u>, 601 F.3d 25, 30 (1st Cir. 2010). "A ruling that conduct violates Chapter 93A is a legal, not a factual determination." <u>Incase Inc.</u> v. <u>Timex Corp.</u>, 488 F.3d 46, 56 (1st Cir. 2007)(internal quotation marks omitted).

Lechoslaw's contentions center around his argument that BoA's agents should have apprised him of before selling him the official check. According to Lechoslaw, BoA should have not induced him to purchase an official check, and he would not have been so induced had BoA explained the risks associated with its purchase. The risk that Lechoslaw wanted to be apprised of -- and which he contends supports a violation of 93A for BoA's failure to disclose -- was that the official check could be lost in transit

contain "[the] appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies") (internal quotation marks omitted). Nevertheless, Lechoslaw has attempted to make some arguments and we address them in our discretion.

from one bank to another, and that its payment would therefore be delayed. The evidence at trial was that Lechoslaw came to a BoA branch wanting to send money to Poland but he lacked the necessary information to do so via a wire transfer. Lechoslaw claims that this method was superior to the official check and that therefore BoA should have allowed him to use a wire transfer. BoA's witness explained that BoA could not initiate a wire transfer if the client did not bring with him a bank account number at the receiving bank -- in this case, a Polish bank -- and a routing identification number for that bank. Since Lechoslaw did not have a bank account in a Polish bank that could accept wire transfers from the United States, the BoA agent told Lechoslaw that his best option was an official check, which Lechoslaw obtained. Lechoslaw's arguments that BoA had an obligation to advise him of the possibility that the check could get lost in the mail and that this would delay the payment is simply unavailing. The risk that letters may be lost in the mail is commonly known; BoA did not need to state the obvious. There was no evidence that BoA violated chapter 93A in any of its dealings with Lechoslaw, and the District Court properly entered judgment in its favor.

### III. Conclusion

For the foregoing reasons, we affirm in all respects.

**Affirmed**.