Landya McCafferty, United States District Judge *328 Getinge AB, one of the three defendants in this multi-district litigation, moves pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss all claims against it for lack of personal jurisdiction. See doc. no. 80. Plaintiffs object to the motion to dismiss and also move for discovery on the issue of personal jurisdiction. See doc. no. 95. Getinge AB objects to discovery.
Background
Plaintiffs bring claims in individual cases for injuries they allege were caused by hernia repair products made from C-Qur mesh. They further allege that the C-Qur mesh products were developed, manufactured, marketed, and sold by the defendants, Getinge AB, Atrium Medical Corporation ("Atrium"), and Maquet Cardiovascular US Sales, LLC ("Maquet"). Atrium and Maquet are wholly-owned subsidiaries of Getinge AB. The cases have been consolidated in this court for pretrial proceedings as multi-district litigation.
Getinge AB moves to dismiss all claims against it for lack of personal jurisdiction. Plaintiffs object, arguing that they have satisfied their burden of showing that the court has personal jurisdiction over Getinge AB. Plaintiffs also move for leave to conduct discovery limited to Getinge AB's personal jurisdiction in the event that the court is not inclined to deny the motion to dismiss.
Discussion
In the Master Long Form Complaint, plaintiffs allege that Getinge AB is a Swedish corporation with its principal place of business in Sweden. They allege that Atrium is incorporated under the laws of Delaware with its principal place of business in New Hampshire, and Maquet is incorporated under the laws of Delaware with its principal place of business in New Jersey.
With regard to defendants' personal jurisdiction, plaintiffs allege:
24. Defendants have and continue to conduct substantial business in the State of New Hampshire and in this District, distribute Hernia Mesh Products in this District, receive substantial compensation and profits from sales of Hernia Mesh Products in this District, and made material omissions and misrepresentations and breaches of warranties in this District, so as to subject them to in personam jurisdiction in this District.
25. Defendants conducted business in the State of New Hampshire through sales representatives conducting business in the State of New Hampshire, and because Defendants were engaged in testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, and/or through third parties or related entities, Hernia Mesh Products in New Hampshire.
26. Consistent with the Due Process Clause of the Fifth and Fourteenth Amendments, this Court has in personam jurisdiction over Defendants, because Defendants are present in the State of New Hampshire, such that requiring an appearance does not offend traditional notices of fair and substantial justice.
Doc. no. 53.
Plaintiffs do not allege that Getinge AB itself has any physical presence in New Hampshire or anywhere in the United States. They allege, however, that this court has personal jurisdiction over Getinge AB for the following reasons:
• Getinge AB was directly responsible for the design, development, manufacture and sale of the C-Qur devices.
*329 See doc. no. 53 at ¶¶ 9, 10, 15, 16, 18.
• Getinge AB assumed Atrium's liabilities, and is therefore liable as Atrium's successor. See id. at ¶ 8.
• Getinge AB is liable for Atrium's and Maquet's actions because they are Getinge AB's agents and/or alter egos. See id. at ¶¶ 11-14.
Getinge AB moves to dismiss, contending that the court lacks personal jurisdiction over it because it is a Swedish corporation without jurisdictional contacts with any state in the United States. It further contends it did not assume Atrium's liabilities and that plaintiffs cannot show that the activities of Atrium and Maquet can be imputed to Getinge AB.
Plaintiffs object, arguing first that Getinge AB has waived a personal jurisdiction defense or should be judicially estopped from asserting the defense. Plaintiffs also argue that personal jurisdiction exists because, as they alleged in their complaint, Getinge AB is responsible for the C-Qur products sold after it acquired Atrium and because the activities of Atrium and Maquet can be attributed to Getinge AB under theories of assumption of liability, agency, and alter ego. Alternatively, plaintiffs move for leave to conduct discovery on the jurisdictional issues.
I. Waiver
A defendant waives the defense of a lack of personal jurisdiction by failing to raise it in a timely motion or failing to include it in a responsive pleading. Fed. R. Civ. P. 12(h)(1). A defendant may also waive the defense through conduct that is inconsistent with the defense. Vazquez-Robles v. CommoLoCo, Inc., 757 F.3d 1, 3 (1st Cir. 2014). Conduct that may constitute waiver of the personal jurisdiction defense, in addition to a failure to raise the defense in a timely manner, includes "participation in, or encouragement of, the district court proceedings." Precision Etchings & Findings, Inc. v. LGP Gem, Ltd., 953 F.2d 21, 25 (1st Cir. 1992) ; Gen. Contracting & Trading Co., LLC v. Interpole, Inc., 940 F.2d 20, 22 (1st Cir. 1991) ; see also Lechoslaw v. Bank of Am., N.A., 618 F.3d 49, 55 (1st Cir. 2010).
Plaintiffs contend that Getinge AB has waived the defense of lack of personal jurisdiction by participating in the multi-district litigation and complying with various court orders without reserving the defense. Getinge AB argues that its involvement in routine case management matters did not waive its right to assert a lack of personal jurisdiction defense. Getinge AB also represents that it reserved the right in its response to plaintiffs' motion for transfer and consolidation and then asserted the defense in its answer and moved to dismiss in a timely manner.
A defendant does not waive a personal jurisdiction defense by participating in the initial proceedings for multi-district litigation as long as that defendant raises the defense in a timely motion to dismiss. In re: Mobile Telecomms. Techs., LLC, 243 F.Supp.3d 545, 551-52 (D.N.J. 2017). In this case, Getinge AB raised the lack of personal jurisdiction as an affirmative defense in its answer filed on June 6, 2017. See doc. no. 77 at 18. On the same day, Getinge AB filed its motion to dismiss for lack of personal jurisdiction. See doc. no. 80. Its participation in the preliminary multi-district litigation proceedings does not operate as a waiver of the defense. In short, plaintiffs have not shown that Getinge AB waived the defense of a lack of personal jurisdiction.
II. Judicial Estoppel
Plaintiffs also argue that Getinge AB is barred by judicial estoppel from raising the defense. In support, plaintiffs assert that Getinge AB's participation in a *330 related product liability action in New Hampshire state court and in a product liability action in California state court, without asserting a lack of personal jurisdiction defense in either case, bars the defense here.[1] Plaintiffs also rely on Getinge AB's suit in Delaware state court against the founder and primary shareholder of Atrium, Steve Herweck.[2]
The doctrine of judicial estoppel "typically applies when, among other things, 'a party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled.' " Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 170, 130 S.Ct. 1237, 176 L.Ed.2d 18 (2010) (quoting New Hampshire, 532 U.S. at 750, 121 S.Ct. 1808 ). "The doctrine should be employed when a litigant is playing fast and loose with the courts, and when intentional self-contradiction is being used as a means of obtaining unfair advantage." John Hancock Life Ins. Co. v. Abbott Labs., 863 F.3d 23, 34 (1st Cir. 2017) (internal quotations marks and citation omitted). The party to be estopped must take positions that are mutually exclusive, must have persuaded a court to adopt or rely on the earlier position, and "must stand to derive an unfair advantage if the new position is accepted by the court." RFF Family P'ship, LP v. Ross, 814 F.3d 520, 528 (1st Cir. 2016) (internal quotation marks and citation omitted).
Judicial estoppel does not apply here. Although Getinge AB participated as a defendant in two cases without raising the defense, Getinge AB has not affirmatively taken a contrary position to the one it asserts here; that is, Getinge AB has not persuaded the courts in those two cases to find that personal jurisdiction existed there. Further, plaintiffs have not shown that Getinge AB is attempting to gain an unfair advantage by asserting the defense here.
In sum, plaintiffs have not shown that Getinge AB is barred from raising the defense of personal jurisdiction based on a theory of judicial estoppel.
III. Jurisdiction Analysis
"Personal jurisdiction implicates the power of a court over a defendant. In a federal court, both its source and its outer limits are defined exclusively by the Constitution." Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 143 (1st Cir. 1995). A "federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state."
*331 Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 8 (1st Cir. 2009) (internal quotation marks and citation omitted). Thus, ordinarily, a federal court sitting in diversity must "find sufficient contacts between the defendant and the forum to satisfy both that state's long-arm statute and the Fourteenth Amendment's Due Process clause." Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995).
In multi-district litigation cases, however, the inquiry is often more complicated. In multi-district litigation based on diversity jurisdiction, ordinarily personal jurisdiction in the transferee court is based on the jurisdiction of the transferor court. See Oliver v. Ethicon, Inc., No. 2:12-cv-06950, 2017 WL 3193652, at *2 (S.D. W. Va. July 27, 2017) (citing cases); In re:Zofran (Ondansetron) Prods. Liab. Litig., MDL No. 1:15-md-2657-FDS, 2016 WL 2349105, at *3 (D. Mass. May 4, 2016). The transferee court then separately applies the state law pertaining to personal jurisdiction applicable in each of the transferor courts. In re U.S. Foodservice Inc. Pricing Litig., No. 3:07 MD 1894(CFD), 2009 WL 5064468, at *8 (D. Conn. Dec. 15, 2009). The transferee court, however, conducts "this analysis according to the law not of the transferor circuit," but rather according to the law of the circuit in which it sits. In re LIBOR-Based Fin. Instruments Antitrust Litig., No. 11 MDL 2262 NRB, 2015 WL 6243526, at *22 (S.D.N.Y. Oct. 20, 2015) ; Torres v. Johnson & Johnson, No. 2:14-cv-29741, 2015 WL 4888749, at *3 (S.D. W. Va. Aug. 17, 2015) ; In re Chinese Manufactured Drywall Prods. Liab. Litig., 894 F.Supp.2d 819, 836-37 (2012) (citing cases).
In this case, Getinge AB does not rely on or cite the law of a particular state to show a lack of personal jurisdiction. Instead, Getinge AB asserts that personal jurisdiction does not comport with the due process clause of the Fourteenth Amendment because it lacks contacts with any state or the United States generally. Plaintiffs review the standards provided under the transferor states' law but do not appear to rely on any specific provisions of state law. Thus, although any particular state's law may allow greater protection to non-residents than is mandated by the Due Process Clause of the Fourteenth Amendment, the court limits itself to a due process analysis in this order.
A. Personal Jurisdiction Framework
To satisfy due process, "the nonresident generally must have 'certain minimum contacts ... such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' " Walden v. Fiore, 571 U.S. 277, 134 S.Ct. 1115, 1121, 188 L.Ed.2d 12 (2014) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ) (additional internal quotation marks omitted). Personal jurisdiction may be general, which is based on continuous and systematic activity in the forum making the defendant "at home" there, or specific, which occurs when the claims arise out of or relate to the defendants' contacts with the forum. Daimler AG v. Bauman, 571 U.S. 117, 134 S.Ct. 746, 754-60, 187 L.Ed.2d 624 (2014) ; Lechoslaw, 618 F.3d at 54. Plaintiffs assert that specific jurisdiction, rather than general jurisdiction, exists over Getinge AB.
In response to a personal jurisdiction challenge, the plaintiff bears the burden of showing that jurisdiction exists. Astro-Med, 591 F.3d at 8. There are "a trio of standards, each corresponding to a level of analysis, that might usefully be employed when a trial court comes to grips with a motion to dismiss for want of personal jurisdiction." Foster-Miller, 46 F.3d at 145.
*332 The first approach requires a plaintiff to make a prima facie showing that personal jurisdiction exists. AngioDynamics, Inc. v. Biolitec AG, 780 F.3d 429, 434 (1st Cir. 2015). A prima facie showing requires the plaintiff to establish facts to support personal jurisdiction through evidence or properly supported proffers, which the court accepts as true without factfinding.[3] Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016). The defendant's properly supported facts are also considered but only to the extent they are not contradicted by the plaintiff's showing. Id.
The prima facie method "is a useful means of screening out cases in which personal jurisdiction is obviously lacking, and those in which the jurisdictional challenge is patently bogus." Foster-Miller, 46 F.3d at 145. On the other hand, however, "in closer, harder-to-call cases, particularly those that feature conflicting versions of the facts," the prima facie method "offers little assistance." Id. In such cases, the court may turn to alternative standards that require the court to take evidence and engage in fact-finding through a hearing. Id.; accord Astro-Med, Inc., 591 F.3d at 8 ; see also Vysedskiy v. Onshift, Inc., No. 16-12161-MLW, 2017 WL 4391725, at *1 (D. Mass. Sept. 29, 2017).
On the other end of the spectrum, a court may "embark on a factfinding mission in the traditional way, taking evidence and measuring the plaintiff's jurisdictional showing against a preponderance-of-the-evidence standard." Foster-Miller, 46 F.3d at 145. A court may invoke this standard when it
determines that in the circumstances of a particular case it is unfair to force an out-of-state defendant to incur the expense and burden of a trial on the merits in the local forum without first requiring more of the plaintiff than a prima facie showing of facts essential to in personam jurisdiction. A court may so determine, for example, when the proffered evidence is conflicting and the record is rife with contradictions, or when a plaintiff's affidavits are "patently incredible."
Id. at 145-46 (quoting Boit, 967 F.2d at 676 ). The "preponderance standard necessitates a full-blown evidentiary hearing at which the court will adjudicate the jurisdictional issue definitively before the case reaches trial." Id. at 146. This "method must be used discreetly," however, as, among other things, "the court's factual determinations ordinarily will have preclusive effect." Id.
In between the two extremes is an "intermediate standard," under which
a district court, even though allowing an evidentiary hearing and weighing evidence to make findings ... may merely find whether the plaintiff has shown a likelihood of the existence of each fact necessary to support personal jurisdiction. This showing constitutes an assurance that the circumstances justify imposing on a foreign defendant the burdens of trial in a strange forum, but leaves to the time of trial a binding resolution of the factual disputes common to both the jurisdictional issue and the merits of the claim.
*333 Id. (internal quotation marks and citations omitted). This method is often referred to as the "likelihood standard," and is useful when jurisdictional proof is intertwined with the merits of a claim. Id.; see Hilsinger Co. v. FBW Invs., 109 F.Supp.3d 409, 418 (D. Mass. 2015) (likelihood standard appropriate when finding of personal jurisdiction turned on the question of whether a defendant manufactured and sold certain products, resolution of which "may also overlap with the merits of the case"). "Prior to using the 'likelihood' standard, it is important 'to ensure that parties are given satisfactory notice, reasonable access to discovery, and a meaningful opportunity to present evidence.' " Hilsinger, 109 F.Supp.3d at 418 (quoting Foster-Miller, 46 F.3d at 148-49 ).
The court next analyzes the disputes concerning personal jurisdiction in this case to determine which standard is appropriate.
B. Specific Jurisdiction
Plaintiffs in this case assert that the court can exert specific personal jurisdiction over Getinge AB based on its own actions with respect to the products at issue in this litigation, based on its assumption of Atrium's liabilities, and based on the activities of Atrium and Maquet as its agents and/or alter egos. Specific jurisdiction requires proof of three elements:
(1) [that] the claim[s] directly arise[ ] out of, or relate[ ] to, the defendant's forum state activities; (2) [that] the defendant's in-state contacts represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendants involuntary presence before the state's courts foreseeable; and (3) [that] the exercise of jurisdiction is reasonable.
Baskin-Robbins, 825 F.3d at 35 (internal quotation marks omitted). Getinge AB contends that it has not engaged in any jurisdictional activities in any state and that the activities of Atrium and Maquet cannot be attributed to it.
1. Summary of Issues and Evidence
a. Getinge AB's Activities
Plaintiffs provide evidence that since 2011, when Getinge AB acquired Atrium, the Getinge name has been used to market and advertise the C-Qur products at issue in this litigation. Specifically, plaintiffs point to a Getinge advertisement in General Surgery News promoting the C-Qur family of products and directing customers to the Getinge website (www.Getingegroup.com). Plaintiffs also note that the website identifies C-Qur products as part of Getinge's hernia mesh products, and that it refers to the items as "our" products. Finally, plaintiffs submit a June 2016 letter from Getinge to customers regarding a competitor's hernia mesh product, which discusses "Maquet Medical Systems USA/Getinge Group (formerly Atrium Medical Corporation)" and refers to "our" C-Qur products. The letter lists an address for Getinge Group as 45 Barbour Pond Drive, Wayne, NJ 07470.
Getinge AB does not dispute that the products at issue in this litigation are marketed and sold under the Getinge name. It argues, however, that the name "Getinge" is used as a "master brand," tradename, and trademark for marketing, and that this use is separate from the corporate identity of Getinge AB, a defendant in this case. It also distinguishes the "Getinge Group," an entity with a New Jersey address, from Getinge AB, though it does not precisely explain the relationship between the entities.
*334 b. Atrium and Maquet's Conduct
Plaintiffs also contend that the activities of Atrium and Maquet can be attributed to Getinge AB. Atrium and Maquet do not challenge the court's personal jurisdiction over them. Atrium has its principal place of business in Hudson, New Hampshire, and as such is "at home" in New Hampshire. Maquet has its principal place of business in New Jersey, making it "at home" there. In addition, Atrium and Maquet do not dispute that they are engaged in business in the United States and do not dispute that they have sufficient minimum contacts with all of the states implicated in this case to support personal jurisdiction. Therefore, their conduct could support the exercise of personal jurisdiction over Getinge AB if either or both are operating as agents or alter egos of Getinge AB. See, e.g., Medici v. Lifespan Corp., 239 F.Supp.3d 355, 371-72 (D. Mass. 2017) ("Courts have permitted the exercise of jurisdiction over a corporation that is the alter ego or successor of a corporation which is subject to the jurisdiction of the court."); see also Sawtelle, 70 F.3d at 1389 n.4 ("contacts of corporation's agent can subject the corporation to personal jurisdiction" (internal citation omitted)). In addition, if Getinge AB assumed Atrium's liabilities, then Atrium's conduct could subject Getinge AB to personal jurisdiction here. See, e.g., Perry Drug Stores v. CSK Auto Corp., 93 Fed.Appx. 677, 681 (6th Cir. 2003). (A "court may impute the jurisdiction of a corporate predecessor to its successor where the successor expressly assumed the liability of the predecessor corporation.").
Ordinarily, a parent corporation is legally independent from its subsidiaries for purposes of personal jurisdiction. United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1091 (1st Cir. 1992). The presumption of corporate separateness may be refuted, however, by sufficient evidence that the parent controls the subsidiary. Id.; Medici, 239 F.Supp.3d at 371-72. When the issue arises of corporate separation between a parent and subsidiary, courts generally "make an actual inquiry into the nature of the interrelationship before abandoning the jurisdictional quest." Donatelli v. Nat'l Hockey League, 893 F.2d 459, 465 (1st Cir. 1990).
In support of their assertion that Getinge AB assumed Atrium's liabilities, plaintiffs point to Getinge AB's 2011 Year End Report to its shareholders that stated the purchase of Atrium included its liabilities and Getinge AB's subsequent purchase of Atrium's liability insurance that is applicable to the claims in this case. Getinge AB contends that plaintiffs' theory does not apply since it acquired Atrium in a "reverse triangular merger," and otherwise argues that plaintiffs' proffered evidence does not show that Getinge AB assumed Atrium's liabilities.
Plaintiffs also argue that, in the alternative, Atrium and Maquet are Getinge AB's agents or alter egos. Plaintiffs cite evidence that Getinge AB, Atrium, and Maquet represent that they are a single entity, including statements and press releases from Atrium's website and Getinge AB's annual report. Plaintiffs also refer to Getinge AB's June 2016 letter that accepts ownership of the C-Qur products and directs customers with questions to contact a Maquet/Getinge AB representative, rather than an Atrium representative. Finally, plaintiffs point to the Maquet website which directs customers to contact "Vascular Systems (formerly Atrium Medical)" and which provides a VSpurchaseorders@Getinge.com email address. Getinge AB contends that plaintiffs are misreading the cited evidence and that, at best, the evidence shows "an intent to unify under a common 'Getinge' brand and logo." Doc.
*335 no. 113 at 13. It maintains that Atrium and Maquet are separate corporate entities from Getinge AB.[4]
2. Appropriate Standard
Plaintiffs have shown that complex relationships exist among Getinge AB and its subsidiaries. Plaintiffs point to evidence that Getinge AB assumed Atrium's liabilities and that Atrium is no longer operating as a separate entity. Getinge AB disputes the inferences plaintiffs urge from the evidence and other circumstances and denies that it assumed Atrium's liabilities or that Atrium and Maquet operate as its agents or alter egos.
The jurisdictional issues raised here at this pre-discovery phase present difficult questions that are dominated by disputed facts. For example, the Getinge AB website and other advertising raise a question about Getinge AB's activities in advertising and marketing C-Qur mesh products in the United States. In addition, even if Atrium and/or Maquet are liable for plaintiffs' claims in this litigation, Getinge AB's liability depends on whether it is directly responsible for manufacturing and marketing C-Qur mesh products in the United States or whether it is responsible through assumption of Atrium's liabilities, agency, or alter ego status. Therefore, these questions raise issues both as to Getinge AB's personal jurisdiction and its liability on the merits of the claims in this litigation.
In light of these factors, the prima facie standard is inappropriate. Foster-Miller, 46 F.3d at 145 (courts should not use the prima facie standard in "closer" cases "that feature conflicting versions of the facts"). In addition, in light of how closely related the issues of personal jurisdiction are to questions surrounding Getinge AB's liability, the court will not employ the preponderance standard. Hilsinger, 109 F.Supp.3d at 417 (courts should avoid the preponderance standard when it could raise "potential issues regarding issue preclusion and law of the case"). The likelihood standard is the middle ground between the extremes, the prima facie and preponderance standards. For the reasons explained above, the court finds that the likelihood standard is most appropriate here.
C. Jurisdictional Discovery
In addition to objecting to Getinge AB's motion to dismiss, plaintiffs have moved for leave to conduct jurisdictional discovery to develop additional proof to support the existence of personal jurisdiction over Getinge AB. A "diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of in personam jurisdiction may well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense." Negron-Torres v. Verizon Commc'ns, 478 F.3d 19, 27 (1st Cir. 2007) (internal quotation marks and citation omitted). In addition, as mentioned, a court employing the likelihood standard must ensure that the parties have a meaningful opportunity to present evidence and reasonable access to discovery.
Here, plaintiffs have made out a colorable case for the existence of jurisdiction and sought jurisdictional discovery immediately *336 in response to a jurisdictional challenge. See, e.g., Orion Seafood Int'l, Inc. v. Supreme Grp. B.V., No. 11-cv-562-SM, 2012 WL 3776919, at *3 (D.N.H. Aug. 29, 2012) (finding that plaintiffs were entitled to jurisdictional discovery to determine whether one defendant exercised control over another). Therefore, because there are legitimate questions as to Getinge AB's role in the actions underlying this lawsuit and the relationship between the three defendants, and in light of the court employing the likelihood standard, the court finds that plaintiffs are entitled to jurisdictional discovery.
Plaintiffs propose jurisdictional discovery in the form of 106 requests for production of documents, video depositions of a Rule 30(b)(6) designee of Getinge AB, a video deposition of a Rule 30(b)(6) designee of Maquet, a video deposition of Reinhard Mayer, the Chief Financial Officer of Getinge AB, and a video deposition of Steve Herweck. In response, Getinge AB contends that any discovery must be "limited to exploring whether Atrium and [Maquet] are mere instrumentalities of Getinge AB." Plaintiffs and Getinge AB cite cases from a variety of jurisdictions to support or oppose theories of a parent's separation from or lack of separation from its subsidiaries. Both plaintiffs and Getinge AB, however, focus largely on the factors set forth in Bennett v. GAF Corp., No. CIV 93-432-M, 1994 WL 279752 (D.N.H. June 2, 1994), for determining whether a parent's control over a subsidiary warrants piercing the corporate veil. See id. at *2.
Getinge AB characterizes plaintiffs' proposed discovery as overbroad and harassing. In particular, Getinge AB objects to plaintiffs' requests for production that reference "any and all" of Getinge AB's subsidiaries and affiliates when only Atrium and Maquet are at issue here. Getinge AB also objects to the requests for copies of all employee health insurance plans for Getinge AB, Atrium, and Maquet on the ground that those plans do not relate to the Bennett factors. In addition, Getinge AB asserts that the requests must be limited to the date of the complaint. Getinge AB also asserts that plaintiffs' discovery requests implicate European Union and Swedish privacy laws and requests "further briefing on the regulations, restrictions, and consequences imposed by" those laws. Doc. no. 109 at 16.
Plaintiffs assert that the issues of assumption of liabilities, agency, and alter ego are fact-intensive, requiring reasonably broad discovery. With respect to time, plaintiffs contend that because the cases are continuing to be filed in this litigation, their inquiry cannot be limited to the date of the master complaint. Plaintiffs explain that they directed discovery broadly to all of Getinge AB's affiliates and subsidiaries because they anticipate that Getinge AB will dispute which entity acquired Atrium. They also contend that health insurance plan information pertains to whether Getinge AB is intermingling accounts and records with Atrium and Maquet and other alter ego factors. They dismiss the privacy laws raised by Getinge AB as a red herring.
Plaintiffs' proposed discovery is broader than necessary to address the jurisdictional issues that have arisen here. For example, plaintiffs have not shown that discovery of documents, communications, and other matters related to any and all subsidiaries and affiliates of Getinge AB is within the scope of the jurisdictional issues raised here. Nor have plaintiffs shown that production of all health insurance plans is necessary to determine which entity paid for health insurance. For that reason, plaintiffs shall not serve the proposed discovery attached to their motion for leave to conduct discovery.
*337 Plaintiffs are granted leave to conduct limited discovery that is focused on the issues necessary to decide whether the court may exercise personal jurisdiction over Getinge AB. Plaintiffs shall revise and narrow their discovery for that purpose.
Any objection to plaintiffs' revised discovery shall be addressed and resolved by counsel. If counsel are unable to resolve discovery disputes, despite their best efforts to do so, specific objections may be raised in a timely manner in an appropriate motion.[5] As always, sanctions for failure to make disclosures or to cooperate in discovery under Federal Rule of Civil Procedure 37 are applicable here, and fees may be awarded to the prevailing party who files or opposes a motion to compel under Rule 37(a)(5).
D. Procedure
As discussed, the issue of personal jurisdiction over Getinge AB will be addressed, if necessary, based on the likelihood standard. Under the likelihood standard, the court holds an evidentiary hearing and weighs the evidence to make findings as to "whether the plaintiff has shown a likelihood of the existence of each fact necessary to support personal jurisdiction." Boit, 967 F.2d at 677. The court's findings made under this standard do not have preclusive effect. Foster-Miller, 46 F.3d at 145-46.
Getinge AB is granted leave to file a second motion to dismiss for lack of personal jurisdiction based on the likelihood standard, if discovery supports such a motion.[6] Plaintiffs shall respond to a motion to dismiss within the time allowed under the Federal Rules of Civil Procedure and the Local Rules of this district. When motion practice on the issue is complete, the court will schedule a hearing.[7]
Conclusion
For the foregoing reasons, Getinge AB's motion to dismiss for lack of personal jurisdiction (document no. 80) is denied without prejudice. Getinge AB's motion to strike plaintiffs' supplemental objection (doc. no. 299) is denied as moot.
Plaintiffs' motion for discovery on personal jurisdiction (document no. 95) is granted to conduct discovery that is revised and limited to focus on the issues necessary to decide whether the court may exercise personal jurisdiction over Getinge AB under the likelihood standard.
The deadline for completion of jurisdictional discovery is February 14, 2018. Interrogatories and requests for production or admissions must be served with adequate time for responses before that date.
*338 Getinge AB is granted leave to file a second motion to dismiss for lack of personal jurisdiction on or before March 2, 2018. Failure to file a motion to dismiss for lack of personal jurisdiction by that deadline, absent good cause, shall result in waiver of the defense.
SO ORDERED.

Plaintiffs' argument as to Getinge AB's failure to challenge personal jurisdiction in other cases appear to focus only on judicial estoppel. To the extent plaintiffs intended to argue that Getinge AB's failure to challenge personal jurisdiction in other cases operates as a waiver of the defense, that argument is without merit. As Getinge AB points out, consent to jurisdiction in one case does not constitute waiver of a jurisdictional defense in another case. Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria, 937 F.2d 44, 50 n.5 (2d Cir. 1991) ; accord Plumbers' Local Union No. 690 Health Plan v. Apotex Corp., No. 16-665, 2017 WL 3129147, at *10 n.10 (E.D. Pa. July 24, 2017) ; Brainware, Inc. v. Scan-Optics, Ltd., No. 3:11cv755-REP-DJN, 2012 WL 1999549, at *4 n.3 (E.D. Va. May 9, 2012).

Plaintiffs provide no analysis of the elements of judicial estoppel in their objection and cite no case in which a defendant's actions in other cases barred the defense of personal jurisdiction based on judicial estoppel. In their surreply, however, plaintiffs provide a slightly more developed theory of judicial estoppel, relying on New Hampshire v. Maine, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001).

Plaintiffs appear to argue that they can rely on unsupported allegations alone to make a prima facie case. They are mistaken. See A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016) ; Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992) ("The prima facie showing of personal jurisdiction must be based on evidence of specific facts set forth in the record. The plaintiff must go beyond the pleadings and make affirmative proof." (internal quotation marks and citations omitted)).

Plaintiffs also refer to a decision in a related case in New Hampshire state court, Hayward v. Atrium Med. Corp., 212-2015-CV-00087 (N.H. Super. Ct. July 11, 2012), where the court granted the plaintiffs' request to amend their complaint to add claims to hold Getinge AB liable on a theory of "piercing the corporate veil and assumption of liabilities." Plaintiffs offer no support for the theory that the superior court's order allowing them to amend their complaint to allege a claim for piercing the corporate veil can be used as evidence that personal jurisdiction exists in this case.

This includes any challenge to plaintiffs' revised discovery requests based on Getinge AB's privacy and international law concerns.

As mentioned, for purposes of the discovery issues, plaintiffs and Getinge AB focus on the factors laid out in Bennett. That case, however, sets forth factors relevant to determining whether to pierce the corporate veil under New Hampshire law. The court notes that to the extent Getinge AB files a second motion to dismiss for lack of personal jurisdiction, the parties will be required to present a choice of law analysis to show what law will govern with regard to evaluating the relationship between Getinge AB, Atrium, and Maquet.

On November 9, 2017, plaintiffs filed a supplemental objection to Getinge AB's motion to dismiss for lack of personal jurisdiction. See doc. no. 283. On November 13, 2017, Getinge AB moved to strike the supplemental objection as "untimely and procedurally barred." Doc. no. 299 at ¶ 6. The court reviewed plaintiffs' supplemental objection and the additional facts and arguments set forth in that filing do not change the court's analysis as set forth in this order. Therefore, Getinge AB's motion to strike (doc. no. 299) is denied as moot.